In the Matter of Arthur W. Richter, an Attorney at Law.

*May 15—June 22, 1925.*

*Attorney and client: Disbarment: Attorney in private litigation: Advancing defense prejudicial to honor of opposite party: Failure to maintain allegations by proof: Power of court: Good moral character as prerequisite of practicing attorney.*

1. An attorney who alleges in his answer, but offers no proof, that a woman who has brought an action against him for the value of domestic services entered into an illegal contract to live in illicit relations with him, and rendered services incident to the relationship, is guilty of misconduct justifying the revocation of his license, for advancing facts prejudicial to plaintiff's honor and reputation, in violation of his oath under sec. 2586a, Stats., and is wanting in good moral character. p. 505.

2. The answer of such attorney in disbarment proceedings that he was dissuaded by one of his attorneys from proving the defense that the domestic services were rendered pursuant to an illegal agreement and incidental to a course of illegal conduct between the parties raises no issue of fact on which evidence should be taken. p. 501.

3. A certificate of admission to practice law certifies to an attorney's good moral character as well as to his attainments as a student of the law, and such character is a prerequisite to a continuance in practice. p. 502.

4. Courts can disbar an attorney only for that moral delinquency which consists in a want of integrity and trustworthiness and renders him an unsafe person to manage the legal business of others. p. 504.

5. While a court has no jurisdiction over private litigants except as invoked in a proper judicial proceeding, the fact that an attorney is a party does not lessen the court's duty or its power with respect to him if he is guilty of such misconduct in office as shows him so wanting in moral character as to be unfit to hold the office of attorney. p. 505.

THIS PROCEEDING arose in the following manner: The respondent, *Arthur W. Richter,* who is an attorney at law, admitted to the practice of law in this state by order of this court made and entered on the 12th day of February, 1915, is a member of the Milwaukee Bar, and it appears from the record in a certain action begun in the circuit court for Milwaukee county by one Clara Bury against *Arthur W. Richter* that the said Clara Bury, who was thereafter married and is now known as Clara Stark, by which name she will be hereafter designated, was during the year 1915 a waitress employed in the store of Gimbel Brothers at Milwaukee; that while there she served the respondent as a guest of the café maintained by her employers; that at his solicitation she agreed to enter his employment as a housekeeper; that thereafter she left the city of Milwaukee and went to her home in the state of Michigan; that while she was at her home in the state of Michigan she was visited there by the respondent; that upon her return to the city of Milwaukee about the month of September, 1915, she entered the employment of the respondent as a housekeeper and continued in that employment down to approximately the 10th day of December, 1921. From the record it appears that she was never paid any regular salary but that from time to time presents were made to her; that the respondent furnished her with funds with which to operate and maintain

his home; that during part of the time the wife of the respondent lived in one part of the apartments and the respondent and Clara Stark in the other; that for a period of approximately two years the parents of the respondent resided in his home; that during that time the plaintiff cared for and nursed respondent's parents; that she did all of the work necessary to be done in and about the apartments of the respondent and fully discharged her duties as a housekeeper and domestic.

It further appears that a short time before her departure the respondent adopted a course of treatment which compelled her to leave his home; that she left his home and that thereafter he refused to pay her or remunerate her for her services; that on the 4th day of February, 1922, the plaintiff began an action in the circuit court for Milwaukee county against the respondent by service of a summons and complaint, appearing therefor by her attorneys, Schmitz, Wild & Gross. The defendant appeared and set up the following in his verified answer:

"1. For a first defense, that no services were rendered by plaintiff to the defendant at his special instance or request, but alleges that whatever services were rendered were rendered gratuitously by the plaintiff without expectation of pay.

"2. For a second defense, that plaintiff's claim is barred by the statute of limitations.

"3. For a third defense, that plaintiff has been fully paid for all said services, and that there is now nothing due plaintiff from defendant."

This answer was verified on the 25th day of August, 1923. The case stood on the calendar for trial, and on the first day of the trial the respondent filed an amended verified answer in which, in addition to the three defenses already referred to, he set up a fourth defense in the following language:

"That the services mentioned in the complaint were rendered pursuant to an illegal and invalid agreement, and that

said services were incidental to and a part of a course of illegal conduct between the parties."

The case was submitted to a jury upon a special verdict, and by consent of counsel for the defendant the first question, "Did the plaintiff render the housekeeper's services in question at the instance and request of the defendant?" was answered "Yes." As to whether or not the plaintiff had been paid for her services the jury answered "No," and found the unpaid balance of the fair and reasonable value of such services over and above all amounts paid by the defendant to be $2,750. After the verdict of the jury had been received, the respondent attempted to move for a new trial. Whether or not the motion was actually made does not clearly appear, and thereupon the court, upon its own motion, made the following ruling:

"The court now, of its own motion, strikes out paragraph four of the amended answer filed in this case, June 2, 1924, reading as follows: 'For the fourth defense, that the services mentioned in the complaint were rendered pursuant to an illegal and invalid agreement, and that said services were incidental to and a part of a course of illegal conduct between the parties.'

"The court strikes out this paragraph and expunges it from the record, upon the ground that it is unfounded. In fact, no evidence offered in support of it or attempted to be offered in support of it. It is scandalous and has no place in the record. The court wishes to discourage that form of pleading in any lawsuit, if it is intended by that manner of pleading to scare the plaintiff out of court. The court desires to say very earnestly that it disapproves of that practice. Upon the record here, this plaintiff has a perfectly just claim, and if any such illegal and scandalous matter was supported by evidence there is nothing to prevent the defendant to verify that answer, being a practicing lawyer, to support that by evidence. If he was not ready to support it by evidence, that answer should not have been filed on June 2d, on the eve of the trial of this case or during the trial, I believe."

To this ruling of the court the defendant excepted. The trial court thereupon further found that the defendant in the course of the trial, when he was sworn as a witness, had testified in such a manner as to induce a reasonable presumption that he had been guilty of perjury therein, specifying the particulars, and ordered the respondent to give a recognizance, with sureties, in the sum of $1,000, and bound him over to the municipal court of Milwaukee county for trial.

The trial below seems to have been conducted in part by the respondent and in part by his counsel. Judgment was entered for the plaintiff, and the respondent appealed from the judgment to this court. The record was filed here. The respondent filed briefs and appeared personally upon the argument. During the course of the argument opposing counsel charged the respondent here with misconduct in respect to the fourth defense set forth in his amended answer, and alleged that it was intended thereby to charge that the plaintiff had entered into an illegal contract by which she was to sustain illicit relations with the respondent and that the services which she rendered as housekeeper were rendered as an incident to her agreement to live with him. The charge was not stated in this language, but it clearly appeared therefrom that counsel for the plaintiff understood such to be the defense sought to be set up by the fourth paragraph of the amended answer. To this charge the respondent made no response by way of excuse or justification. The printed case offered here disclosed no exceptions, although errors were assigned which could only be reviewed under exceptions. It was apparent that the appeal was taken for purposes of delay and not brought in good faith. This appearing satisfactorily to the court, the judgment was affirmed. The court then directed that the record in the case be retained, and upon consideration thereof there issued out of this court on the 25th day of March, 1925, an order requiring the respondent to show cause why his license to practice as an attorney at law in this state should not be revoked and

his name stricken from the roll and he be disbarred from the further practice of law in the courts of this state. The order to show cause contained a full recital based upon the record in the case wherein Clara Stark was plaintiff and *Arthur W. Richter* was respondent. The first part of the recital relates to matters as to which the trial court was of the opinion that the defendant had been guilty of perjury. The second part thereof referred to the alleged scandalous, scurrilous, and improper pleading, and was as follows:

"That the action above referred to was one brought by the plaintiff against the said *Arthur W. Richter* for and on account of services rendered to the said *Arthur W. Richter* as housekeeper and domestic, said services extending over a period of between six and seven years and being brought upon *quantum meruit,* the plaintiff claiming there was no express contract; that on or about the 31st day of May, 1924, the said *Arthur W. Richter* caused one Morris Podell as his attorney of record in said action to subscribe, and that the said *Arthur W. Richter,* on or about said day, duly verified by subscribing thereto, and that he subsequently, on June 2, 1924, duly filed and caused to be spread upon the records of the circuit court of Milwaukee county an amended answer in the above entitled action, which said amended answer contains the following sham, scurrilous paragraph inserted therein in bad faith for the purpose of intimidating the plaintiff and thereby forcing her to withdraw her said claim and forego her just rights therein, said defense being in the language following, to wit:

" 'For the fourth defense, that the services mentioned in the complaint were rendered pursuant to an illegal and invalid agreement, and that said services were incidental to and a part of a course of illegal conduct between the parties.'

"That this was done in disregard and in violation of the defendant's oath as an attorney at law of this court and in an attempt to maintain an alleged defense which the said defendant did not then and there believe to be honestly debatable under the laws of the land, to employ in said action in his own defense means inconsistent with truth and honor and to indulge in offensive personality and to advance the

alleged fact in said paragraph of said amended answer as hereinbefore set forth as prejudicial to the honor and reputation of the plaintiff although not required by the justice of the cause; that said unlawful purpose is evidenced by the fact that at no time during the trial of said action did said defendant offer any evidence to support or in any wise undertake to substantiate the allegations contained in the fourth paragraph of the said amended answer; that at the time of the filing of the said amended answer, as defendant well knew, the plaintiff was and is the wife of one Herbert Stark."

The order to show cause was served upon the respondent on March 27, 1925, and was returnable on April 10, 1925. Upon the return day the respondent appeared and suggested that he had not had time to prepare an answer sufficiently broad in substance and suitable in form, and asked for a continuance. Thereupon the time within which the respondent might answer was extended to April 20, 1925. On that day the respondent appeared personally and filed his written answer. To the first charge the respondent denied that he had sworn or declared falsely and alleged that he did not have accurate and exact knowledge of the age of his father; that he was the youngest child of the family, and that respondent is not now certain of the age of his father at the time of his father's death.

In view of the matters set out respecting the first ground set forth in the order to show cause, it is considered that they raise an issue of fact and as to which, if further proceedings were to be had thereon, it would be necessary to take evidence.

In respect to the second charge the respondent alleges as follows:

"Admits that he filed the answer containing the defense set forth in the said order to show cause, but alleges that said defense was interposed in good faith and not for the purpose of intimidating the plaintiff or forcing her to withdraw her claim or forego her rights, but that said defense

was interposed honestly, with the honest intent of proving the same in said action, and that respondent intended to prove the same but was deterred and dissuaded therefrom by one of his attorneys. That respondent did not intend to employ in his defense any means inconsistent with truth and honor nor to indulge in offensive personality, and that said defense was not interposed to prejudice the honor and reputation of the plaintiff, but for the honest purpose of showing the court and the jury the whole truth with reference to the subject matter and cause of action in the said case so tried in the circuit court, and that respondent is able to produce evidence to prove the foregoing and to show that the said defense was honestly interposed in good faith and with no bad motive and with no purpose other than an honest desire to show the truth of the cause, and respondent prays that he may be afforded the opportunity to produce said evidence so as to more fully inform this court as to all facts, motives, and purposes concerning the said defense set forth in the second charge of the said order to show cause.

"Respondent further respectfully shows to the court that the said fourth defense contained in the answer of respondent in the circuit court action referred to in the order to show cause was struck out by the circuit court upon the trial of said action and was not a part of the record in this court, and that no appeal was taken from said order of the circuit court striking out said fourth defense and the same stands unreversed, and that no error was assigned by this respondent upon the said order of the circuit court striking out said fourth defense and that the same was in no way made a part of the record of this court and was not a subject of the appeal."

Upon the filing of the answer by the respondent by order of the court, there was served upon the respondent a notice that the court would hear the respondent in person or by attorney at the opening of court on the 15th day of May, 1925, as to why an order of this court should not be entered as indicated in the order to show cause, said citation being based upon the following recital:

"The respondent in the above matter having appeared personally in court and filed a written answer and return in

response to the order to show cause heretofore issued out of this court, it is considered that upon the answer to the second charge contained in the order to show cause and the records and files herein, that the respondent is guilty of misconduct as alleged in the second charge of the order to show cause, or in the alternative, if the allegations of the answer filed by the respondent be true as alleged in the return, that he has been guilty of such grossly immoral, fraudulent, and oppressive conduct toward the plaintiff in said action as clearly to disclose that he is wholly wanting in that good moral character which is a necessary condition precedent to his right to continue to practice law within the state of Wisconsin."

The respondent appeared by counsel at the time fixed, the court listened to oral argument, briefs were filed by the respondent personally and by his counsel, and the whole matter was taken under consideration by the court. The contention of the respondent is, first, that by the return of the respondent it appears that the answer was filed in good faith, with honest intent to prove the same, and that it is therefore neither scandalous nor sham; second, that the illegal contract under and by virtue of which it was alleged by the fourth paragraph of the answer that the services were rendered might be one which was neither wrong nor immoral, such for instance as violation of the Sunday law, the usury statute, and that therefore it cannot be inferred that the respondent, if the allegations of the fourth paragraph be true, has been guilty of immoral conduct. Other supposititious matters are urged in the brief as a basis for the respondent's request for a reference which do no credit either to the candor of the respondent or to the intelligence of the court.

The record discloses that at no time during the course of the original action nor during the course of this proceeding has the respondent been fair, candid, but, on the contrary, the record is filled with evasions, evidences of duplicity, and total want of appreciation of the gravity of the situation. While the respondent shows some concern at the prospect of

an adverse determination, he has not been moved thereby to make an open, frank, lawyerlike statement of the situation to the court.   He is now not only willing but desirous of further exploiting his relations with the plaintiff in the original action, causing her further embarrassment, and wishes to offer proof of conduct to which he was a party which would scandalize her and disturb her relations with her husband and publish his own delinquencies to the world. While it is true the misconduct of the defendant in this case is insidious and difficult to define or describe, a consideration of the whole record, including the respondent's conduct in this court, is such as to leave no doubt in the mind of the court as to the unprofessional and improper conduct of the respondent, indicating a degree of moral obtuseness, a lack of a sense of decency, and a brazen disregard of established ethical standards which are little short of appalling.

For the respondent there was a brief and oral argument by *W. B. Rubin* of Milwaukee, and a brief by *A. W. Richter.*

ROSENBERRY, J.   The question now arises whether or not the answer to the second charge raises any issue of facts as to which evidence should be taken.   Upon his admission to the bar, the respondent, among other things, took an oath in open court, as follows:

"I will abstain from all offensive personality and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged."

This he is required to do by the provisions of sec. 2586a, Stats. 1913.   In view of the verdict of the jury and the undisputed facts appearing of record in the case of Clara Stark against the respondent, the following situation was presented: The respondent had induced the plaintiff to enter his employ, where she had remained for a period of between six and seven years, during which time she had faithfully

and efficiently performed her duties as a housekeeper and domestic. During that time he had furnished her some clothing, had made her some presents, had given her funds for the maintenance and operation of his house, as to which she was not required to make a very close accounting. The evidence shows without dispute that she performed services of the most menial character, shining respondent's shoes, opening and closing his garage door, and otherwise serving him in a menial capacity. The respondent was a well educated, successful lawyer, had occupied some positions of high trust and responsibility, and was known as a resourceful lawyer. The plaintiff sought legal counsel, suit was instituted, defenses were set up, and the case was ready for trial. On the first day of the trial the defendant filed an amended answer in which he alleged that the services described in the plaintiff's complaint were rendered pursuant to an illegal and invalid agreement and that said services were incidental to and a part of a course of illegal conduct between the parties. Thereafter he offers not a single word of proof to sustain the allegation of the fourth paragraph of the amended answer. Upon his appearance here, the respondent was interrogated as to what was meant by the illegal contract, and he said that it referred to a contract to marry between the plaintiff and defendant which was illegal because the defendant then had a wife living and not divorced. This is a subterfuge born of the dire necessity of this case. In the first place, domestic services could scarcely be rendered as an incident to the contract of marriage, however illegal the contract itself might be, nor would they in such case be incidental to and a part of a course of illegal conduct. To charge the respondent with ignorance of that fact would do scant justice to his legal attainments. The court would be obliged to stultify its intelligence if it should construe the allegation of the fourth paragraph to mean anything else than that the respondent intended to charge the plaintiff with having entered into a contract to live in illicit relations with

him and that she had rendered the services for which she was asking compensation as an incident to that relationship. No proof having been offered of the truth of these allegations and the plaintiff being presumed to be innocent until proven to be otherwise, we must assume upon the record that the matters alleged in the fourth paragraph are untrue. If untrue, they constituted a dastardly attack upon the reputation and character of a person who had served him most faithfully, according to his own admissions, for many years, and that in order to defeat her just claim for services rendered. That they were intended to humiliate her, and if possible to compel her to desist from the further prosecution of her claim, there can be no reasonable doubt. Throughout the trial there was at times an approach to matters which might indicate an intention to offer evidence in support of this allegation, just enough to keep constantly before the mind of the plaintiff the threat contained therein. That she had the courage to go through with the trial under such circumstances is an indication of her strength of will and steadfastness of character. The only answer made here by the respondent was that he intended to prove his defense and was dissuaded therefrom by one of his attorneys. This constitutes no denial, but if anything is an admission as to himself that the allegations of the fourth paragraph are true and that the defendant proposed to prove in open court that he had been guilty of such a course of illegal conduct with the plaintiff that it would defeat her right to recovery. She was not claiming the right to recover upon an express contract but on *quantum meruit.* He now seeks an opportunity to further besmirch himself in order to avoid the consequences of his unprofessional conduct. No good purpose can be served by such a proceeding. Respondent's offense was complete when he filed the pleading as he did and offered no evidence in support of it. The respondent cannot justify or excuse his conduct by showing that he induced Clara Stark to enter into an illegal contract by which he would be able to defraud

In re Richter, 187 Wis. 490.

her out of the value of her services for a period of more
than six years.    It is considered that upon the allegations
contained in the second charge of the order to show cause
and the answer made thereto by the respondent, no issue of
fact is raised.

We come now to a consideration of the question of
whether or not the misconduct of the defendant in respect
to the matters set out in the second charge constitutes
grounds for disbarment.    We approach this question with
a full appreciation of the fact that the disbarment of an
attorney carries with it very grave consequences to the party
most concerned.    On the other hand, the appearance in
courts of justice of attorneys who are wholly lacking in
moral standards and appreciation of the high responsibility
which rests upon them as officers of the court is of vast
importance to the general public.    When a court, after ex-
amination and investigation, issues to a citizen a certificate
that he has been admitted to the practice of law in the courts
of this state, it certifies not only to his attainments as a stu-
dent of the law but to the fact that he is a man of good moral
character.    This they are required to do by the statute as
well as by the immemorial usage of courts.    When a citizen
seeks the aid of an officer of the court, the fact that he is
admitted as an attorney should afford the citizen assurance
that he can safely intrust his affairs to the attorney, who will
honestly represent and advise him.    The persons who suffer
most from incompetent and dishonest attorneys are almost
invariably those who are least able to protect themselves.
They are frequently without experience in court matters,
they know nothing of lawyers, and it often happens that they
employ the one first at hand.    A certificate that a citizen has
been admitted to practice ought to mean something and stand
for something, which it cannot do if lawyers are permitted
to prostitute their office and make the administration of
justice a disgrace and a travesty.    In an early day this court

held that a good moral character was not only a condition precedent to admission to the bar but that it was a requisite condition for the rightful continuance in the practice of the law for one who had been admitted. *In re O——, 73* Wis. 602, 42 N. W. 221. The fact that the defendant was a party in no way mitigates the offense which he committed. *Matter of Ryan,* 143 N. Y. 528, 38 N. E. 963. The offense in the second charge was complete when the respondent permitted the fourth paragraph to stand until the end of the trial. He knew when he caused the fourth paragraph to be inserted in the answer exactly what the facts were. Under oath he said that the allegations therein contained were true. Whether or not it can be supported by the evidence, his excuse that he was dissuaded therefrom deceives no one.

In *Ex parte Wall,* 107 U. S. 265, 288, 2 Sup. Ct. 569, the court, speaking of the nature of a proceeding disbarring an attorney, said:

"The proceeding is not for the purpose of punishment, but for the purpose of preserving the courts of justice from the official ministration of persons unfit to practice in them. Undoubtedly, the power is one that ought always to be exercised with great caution; and ought never to be exercised except in clear cases of misconduct which affect the standing and character of the party as an attorney. But when such a case is shown to exist, the courts ought not to hesitate, from sympathy for the individual, to protect themselves from scandal and contempt, and the public from prejudice, by removing grossly improper persons from participation in the administration of the laws. The power to do this is a rightful one; and, when exercised in proper cases, is no violation of any constitutional provision."

As was said by Mr. Justice FIELD (dissenting) in the same case:

"It is not for every moral offense which may leave a stain upon character that courts can summon an attorney to account. Many persons, eminent at the bar, have been chargeable with moral delinquencies which were justly a cause of

reproach to them; some have been frequenters of the gaming table, some have been dissolute in their habits, some have been indifferent to their pecuniary obligations, some have wasted estates in riotous living, some have been engaged in broils and quarrels disturbing the public peace; but for none of these things could the court interfere and summon the attorney to answer, and, if his conduct should not be satisfactorily explained, proceed to disbar him. It is only for that moral delinquency which consists in a want of integrity and trustworthiness, and renders him an unsafe person to manage the legal business of others, that the courts can interfere and summon him before them. He is disbarred in such case for the protection both of the court and of the public."

This court does not sit in this or any other case as a court of inquisition to search out the private life and censor the morals of the attorneys who are its officers. The delinquencies of the respondent in this case were thrust upon our attention by the respondent himself with an audacious effrontery. They could not fail to receive our attention. We should have been recreant to our duty had we ignored them. Reams of testimony could add little if anything to what appears of record in this matter. The offense of the respondent was committed in the course of a judicial proceeding. His willingness to prostitute the forms of law and defile the judicial process is perfectly apparent. He has flouted the obligations which he assumed by the taking of his oath of admission to the bar in the most flagrant and shameless manner. Throughout the entire proceeding he has never exhibited the slightest sense of shame or feeling of regret or any evidence of any appreciation of his moral and ethical obliquities. How can a man who thus conducts himself be a proper person to guide those unlearned in the law and to act as their friend and counselor? Would a suggestion on the part of a client that untruthful testimony be produced be rebuked by an attorney who had no regard for his own oath? Can it be otherwise than that the fountain of justice

is poisoned at its source if men of this character are permitted to direct the course of judicial proceedings.

The respondent seems to be under the impression that the fact that he was a party to the suit entitles him to some privilege that he would not otherwise have. It is true that the court has no jurisdiction over private litigants except as that jurisdiction is invoked in a proper judicial proceeding. The fact that an attorney is also a party, however, does not lessen the court's duty or its power with respect to its officers. The inquiry in this case is not whether the respondent is guilty of some crime or misdemeanor. The question is: Has he been guilty of such misconduct in his office as shows him to be so wanting in moral character as to be an unfit person to hold the office of attorney and counselor at law?

Upon the record in the case wherein Clara Stark was plaintiff and the respondent was defendant and upon the record in this proceeding, the court finds that the respondent has been guilty of misconduct which justifies. a revocation of his license in the particulars already pointed out, in that he did in said case advance facts prejudicial to the honor and reputation of Clara Stark, the plaintiff therein, by the allegations of the fourth paragraph of the answer. The advancement of such facts was not required by the justice of the cause, and the same was done by the respondent in violation of his oath as an attorney of this court.

And the court further finds that the respondent is wanting in that good moral character which is a condition precedent to his right to continue to exercise the rights and privileges of an attorney of this court. Wherefore,

It is the order and decree of this court that the license of the respondent, *Arthur W. Richter,* as an attorney at law of this court, be and the same hereby is revoked, canceled, and annulled, and the clerk of this court is directed to strike the name of the said *Arthur W. Richter* from the roll of attorneys of this court; that the said *Arthur W. Richter* be and he is hereby ordered to refrain and desist from ap-

pearing or practicing as an attorney at law in the courts of the state of Wisconsin from and after the filing and entry of this order.

Let a copy of this opinion and order be served upon the respondent forthwith.

The clerk of this court is further directed to notify the clerks of the circuit courts of the several counties in this state of the fact that the name of the said *Arthur W. Richter* has been stricken from the roll of attorneys of this court and that the said *Arthur W. Richter* is ordered and directed to refrain and desist from appearing as an attorney in the courts of the state of Wisconsin.