STATE, Plaintiff, v. POSTORINO, Defendant.

*No. State 86. Decided January 6, 1972.*
(Also reported in 193 N. W. 2d 1.)

For the plaintiff there was a brief by *Rudolph P. Regez* of Monroe, counsel for the Board of State Bar Commissioners, attorney, and *Warren H. Resh* of Madison, of counsel.

For the defendant there was a brief by *Nicholas C. Catania* of Milwaukee.

PER CURIAM. According to the findings of fact, Postorino is fifty-eight years of age, married, the father of four children, and has practiced law in Racine since 1937. Upon his conviction for commercial gambling, he was sentenced to one year at the state prison at Waupun, the sentence was then stayed, and he was placed on pro-

bation and fined $3,000. The gambling charged in the disciplinary complaint involved the receiving of bets on football, basketball, and baseball games from James C. Williamson. While this gambling extended over a period of some eight years and Williamson's source of money was the theft of funds from the Prudential Insurance Company, for which he was an agent, the complaint is restricted to the period of July 16, 1968, to September 12, 1968. During this period, Postorino received six checks from Williamson totaling $12,972.86, in which the name of the payee was forged by Williamson and which Postorino endorsed, cashed, and used for the purpose of settling the gambling debts. The cashing of these checks by the defendant was through his acquaintance with the president of a Milwaukee bank and the circumstances of their cashing were such as indicated the defendant knew Williamson was taking Prudential checks and forging the payee's name to them.

The referee found Postorino was guilty of unprofessional conduct, his conduct involved moral turpitude and the charges were proved by clear and satisfactory evidence. Postorino argues a conviction for a crime does not necessarily constitute a ground for discipline, relying on language in *State v. O'Leary* (1932), 207 Wis. 297, 241 N. W. 621, and *State v. Roggensack* (1963), 19 Wis. 2d 38, 119 N. W. 2d 412. The defendant also claims there is no decided case in Wisconsin or elsewhere of an attorney being disciplined for his gambling activities. Both statements are true but not controlling and do not constitute reasons why the defendant should not be disciplined. In *Roggensack* we stated not every violation of law by an attorney will subject him to discipline and as a general rule the violation must involve moral turpitude as defined in *State v. McCarthy* (1949), 255 Wis. 234, 38 N. W. 2d 679. However, this court, as the dissent pointed out, did state some conduct such as a wilful intention to violate the law could constitute unprofessional conduct without being impregnated with moral turpitude, but that

such a situation would be an exception. This concept of unprofessionalism rested upon the old canon, 32 of Canons of Professional Ethics, which required an attorney to observe the law as well as uphold the constitution, although our sec. 256.29, Stats., does not expressly make the non-observance of the law unprofessional conduct. However, sec. 256.29 is not exclusive of what amounts to unprofessional conduct.

The lack of a factual precedent is not persuasive because if such a fact were controlling the law would never be applied to new fact situations and consequently would lose its vitality to deal with the ever-changing problems of modern life. Perhaps the closest case to the facts here is *State v. Brodson* (1959), 11 Wis. 2d 124, 103 N. W. 2d 912. Brodson was a gambler, placing his bets with others; but he was disciplined, not for gambling, but for filing fraudulent income tax returns and not reporting his gambling gains.

The defendant argues there was no fraud in his gambling and therefore no moral turpitude. Fraud is not a necessary ingredient of moral turpitude, although it is frequently an element. The claim of honest gambling by the defendant is without merit; as we said in *Brodson,* the ethics of the legal profession must be higher than the ethics of gamblers. While the brief of the defendant attempts to discredit the testimony of Williamson, it fails to be persuasive. Although the referee and this court need not accept the undisputed testimony of a witness, we do accept it here because there was no inherent improbability in Mr. Williamson's testimony. We need not give any weight to the fact Postorino took the fifth amendment at his hearing, because there is sufficient evidence without it. However, we stated in *State v. MacIntyre* (1969), 41 Wis. 2d 481, 164 N. W. 2d 235, the taking of the fifth amendment was no longer a factor properly to be considered or to be given weight in a disciplinary proceeding, but what this language meant is that the taking of the

fifth amendment is not in itself a ground for disbarment. *Spevack v. Klein* (1967), 385 U. S. 511, 87 Sup. Ct. 625, 17 L. Ed. 2d 574. Taking the fifth amendment does not foreclose a court in a civil action from drawing an inference from the invocation of the fifth amendment on an issue involving grounds for discipline. A disciplinary proceeding, such as this, is a civil proceeding and so designated by sec. 256.28 (12), Stats., and this court has often said a disciplinary proceeding was a civil proceeding and not a criminal one. *See State v. Preston* (1968), 38 Wis. 2d 582, 157 N. W. 2d 615, 159 N. W. 2d 684, certiorari denied, 393 U. S. 981, 89 Sup. Ct. 452, 21 L. Ed. 2d 442.

In *Grognet v. Fox Valley Trucking Service* (1969), 45 Wis. 2d 235, 172 N. W. 2d 812, we held that an inference of guilt or against interest of the witness may be drawn as a matter of law from the invocation of the fifth amendment in a civil suit. The inference which may be drawn depends upon the question asked and the weight to be given the inference depends upon the facts.

We accept the findings of the referee who in the performance of his function as a special master applied the proper test in disciplinary cases, that is, the middle burden of clear and satisfactory evidence. *State v. Preston, supra.*

The evidence clearly established Postorino took bets from Williamson, a compulsive gambler, who over the years embezzled $50,000 from his employer. Postorino handled the bets and received a fee therefor; he took care of the cashing of the checks in a most unusual manner in banking practice. The surreptitious manner of pay-offs and of balancing the gambling accounts was indicative of crime and iniquity. There is no doubt the defendant was engaged, not only in gambling, but in commercial gambling as defined in sec. 945.03 (2), Stats. While there is some evidence the defendant also took bets from others than Williamson and Williamson bet with others besides the defendant, these facts do not increase

or lessen the gravity of the charge in the complaint or the character of the gambling engaged in by the defendant.

Commercial gambling is a felony by virtue of secs. 939.60 and 959.044, Stats. 1967. The penalty in sec. 945.03 (2), is a fine of not more than $5,000 or imprisonment of not more than one year, or both. Since the place of the confinement is not designated or the character of the crime expressly defined, the sentence of one year by sec. 959.044 may be ordered served in the Wisconsin State Prison and thus by sec. 939.60 is a felony because it is a crime punishable in the state prison. *See State ex rel. Gaynon v. Krueger* (1966), 31 Wis. 2d 609, 143 N. W. 2d 437.

Being a felony in character, the defendant's conduct is serious by the norms of our society. It may be that not every felony involves moral turpitude in the sense that term is used in a disciplinary case and it may be true that commercial gambling in other states does not constitute a felony; nevertheless, under *Roggensack* the intentional violation of the law may be an exception and amount to unprofessional conduct. We think that is the case here. The defendant's conduct does not involve a private game of poker for a 25-cents limit or social gambling for entertainment for small stakes which the participants can afford. Williamson was placing bets with the defendant for large sums of money, many times a day. At one time the bets totaled as much as $4,000 on a single day. Williamson paid his losses with checks which should have caused the defendant to wonder how Williamson was getting the checks. Other facts of the case strongly imply, as the trial court in the criminal case indicated, a connection with organized crime.

This type of conduct by the defendant is not only unbecoming a lawyer but conduct he should not want to engage in or should engage in as a professional man under

a duty to obey criminal laws. While his conduct is not unprofessional in the strict sense of the word because it did not relate to an activity in a professional capacity, nevertheless, the concept of unprofessional conduct now embraces a broader scope and includes conduct outside the narrow confines of a strictly professional relationship that an attorney has with the court, with another attorney or a client. There are many activities in the minds of the public which a professional man should not undertake because he is a professional man of trust and much is expected of him. A lawyer is a professional man twenty-four hours a day, not eight hours, five days a week.

We are not unaware of the letters of the five judges referring to the defendant's character. Such letters do not really reach the issue in this discipline case. *See State v. Beaudry,* ante, p. 148, 191 N. W. 2d 842. We have also considered the other testimonials, his community work, his family, and also the inevitable unfavorable publicity. However, we must conclude these factors should go to the extent of the suspension and not to the question of whether suspension is needed for the protection of society. Nowhere in the record has this court been given any assurance Postorino has stopped and will not continue his commercial gambling. While suspension in one sense may be considered punishment by the recipient, punishment is not the object of a disciplinary case; but it must be recognized that punishment, if suspension is that, does have a therapeutic value. To the question, does the defendant now lack the moral qualifications, the character to continue to practice law with the respect and confidence of the public, we answer that the defendant should continue to be suspended from the practice of the law.

It is ordered and adjudged that the order of this court of November 2, 1971, suspending Domenick N. Postorino from the practice of law until the further order of the

court is affirmed, with permission granted to the defendant to apply for reinstatement of his license after November 1, 1973, upon compliance with sec. 6, Rule 10, State Bar Rules.

It is further ordered that Domenick N. Postorino pay on or before July 1, 1972, the costs and expenses of these proceedings amounting to $1,072.89, which amount is exclusive of the fees of the board's counsel, and notify his clients now represented by him in all matters involving the practice of law or all matters pending in any court of this state that his license to practice law in this state is suspended.

It is further ordered that the State Bar of Wisconsin notify the courts of record of these orders by sending each a copy thereof.