In the Matter of the Disciplinary Proceedings Against Stephen D. Rabideau, attorney at law.

Supreme Court

*No. 80-453-D. Argued March 3, 1981.—Decided June 2, 1981.*
(Also reported in 306 N.W.2d 1.)

For the Board of Attorneys Professional Responsibility there was a brief and oral argument by *Roy S. Wilcox* of Eau Claire.

For Stephen D. Rabideau there were briefs and oral argument by *Gene D. Linehan* of Wausau.

PER CURIAM. This is an appeal from an order of a referee finding, *inter alia,* that the respondent-appellant, Attorney Stephen D. Rabideau, was subject to discipline for professional misconduct due to a violation of a criminal statute involving moral turpitude. The referee ordered that appellant's license to practice law be revoked, imposed the costs of the proceeding, and required that proof of payment of such costs (and of certain fines, penalty assessments, and costs of the underlying criminal matter) accompany any future application for reinstatement to the bar. We modify the order by directing, instead of revocation, suspension for three years, subject to conditions of reinstatement discussed later in this opinion, and we sustain the imposition of costs of the disciplinary proceeding and the requirement that they be paid prior to reinstatement in the bar. We reverse that part of the referee's disposition ordering that payment of fines, penalties, and costs imposed in the criminal prosecution be made a condition of reinstatement.

On January 15, 1980, the Board of Attorneys Professional Responsibility filed a complaint with this court alleging that on November 12, 1979, Attorney Stephen D. Rabideau, upon a plea of guilty, had been convicted in the circuit court for Clark county of violating secs. 947.15(1)(a) (contributing to the delinquency of a minor), and sec. 161.41(3) (possession of a controlled substance), Stats., and furthermore had not fully paid the fines and penalties imposed pursuant to his conviction. The complaint alleged that respondent's conduct

constituted illegal conduct involving moral turpitude "in violation of DR 1–102(A)(3), a lawyer's disciplinary rule now numbered as SCR 20.04(3) (1980)."[1] The complaint further stated that certain activities with minors in which the respondent had allegedly engaged in 1975 would be relevant to the appropriate discipline.

We referred the matter for hearing to the clerk of circuit court for Clark county pursuant to SCR 21.09(4) (1980), appointing Rodney L. Young of Wausau as referee. Hearing was held on July 3, 1980.

The evidence adduced at hearing shows that Attorney Rabideau graduated from the University of Wisconsin Law School in 1975 and was admitted to the Wisconsin bar in May of 1978. After serving for a few months as assistant attorney in the district attorney's office of Burnett county, he went into practice in Neillsville, Wisconsin, in September 1978.

Rabideau testified that on the evening of August 24, 1979, he was at a school swimming pool, where he had a chance meeting with a youth whom he had represented in juvenile proceedings the previous fall, as a court-appointed attorney. The youth, aged sixteen, and not at that time Rabideau's client, was a resident of the Sunburst Youth Home. Rabideau testified that the youth asked him for a ride back to Sunburst, permission for which was obtained from a supervising counselor. Rabideau stated that he had recently heard reports of mistreatment at the facility and was concerned about such matters, because he had represented other Sunburst youths, and was concerned about this particular youth's mental and physical well being. He said he hoped to use the car ride as a means of finding out more information and offering his concerned attention. According to Rabi-

[1] SCR 20.04(3) (1980) provides:

"SCR 20.04 **Misconduct.** A lawyer shall not:

"(3) Engage in illegal conduct involving moral turpitude."

deau, the youth asked if he had any marijuana in the vehicle. Rabideau did; he acceded to the request, and they shared a marijuana cigarette, which he thought "would facilitate [the youth's] receptiveness to my sincere concern."

Testimony and exhibits introduced at the hearing also showed that on September 21, 1979, the Clark County Sheriff's Department searched Rabideau's apartment, with a warrant, and found therein some marijuana, apparently about two-three grams (an amount Rabideau described as "five or six finger pinches)." After plea negotiations, Rabideau pleaded guilty on November 12, 1980, to charges of contributing to the delinquency of a minor (sec. 947.15(1)(a), Stats.) and possession of a controlled substance (sec. 161.41(3)). The court sentenced him to a $2,000 fine on the first count, $500 on the second, and court costs ($9), with sixty days to pay.[2] A sixty-day extension was sought and granted because of Rabideau's financial inability to meet the deadline; at least some payments have been made since then.

Additional evidence was adduced at the hearing. Certified copies of files of the Dane county district attorney and the Dane county criminal court were introduced, dating from 1975, indicating that criminal complaints were initiated against Rabideau that year for several episodes of allegedly taking indecent liberties with children. Another exhibit was introduced which showed that the state and Rabideau at that time stipulated that the state would dismiss these charges, without prejudice, if Rabideau agreed to psychiatric treatment and met certain other conditions. According to the terms of the

---

[2] The Board of Attorneys Professional Responsibility asserts that the court also imposed a $250 penalty assessment. Rabideau disputes this claim. For reasons which will appear, we need not and do not resolve this dispute.

agreement, which apparently were met, the state agreed not to prosecute at all if the agreement were followed without violation for eighteen months. The other condition relevant to these proceedings provided:

"(3) That both parties agree that at the request of any duly authorized official of the State Bar of Wisconsin, or the Wisconsin Supreme Court, that the file of the District Attorney's Office, including all the allegations contained in the above complaints for the above cases would be available to the officials of the State Bar or the Supreme Court for their consideration in determining whether the defendant qualifies to practice law in the State of Wisconsin.

Rabideau was admitted to the bar in May 1978 after a full review of these matters and their bearing on his fitness to practice law.

Rabideau's attorney objected to the admission of these exhibits at the hearing on the grounds that they were relevant only to his bar admission, not subsequent disciplinary proceedings; that they were "res judicata" as they had been reviewed prior to his bar admission; that their admission violated due process and *ex post facto* constitutional provisions; and that attorney disciplinary rules are not intended to apply to conduct prior to bar admission. Rabideau testified that he thought the entire matter of the 1975 conduct and criminal proceedings had been resolved at his bar admission proceedings.

Rabideau's criminal conviction for the 1979 charges led him to leave his law practice in Neillsville and move to San Francisco, where at the time of hearing he was doing legal research for other attorneys.

On August 20, 1980, the referee, pursuant to SCR 21.09(5) (1980), found that the criminal conviction "represented a violation of a criminal statute involving moral turpitude and as such was misconduct in violation of SCR 21.05." He also found that Rabideau's conduct

and purported justification therefor, "when viewed in the light of his previous criminal misconduct," called for a severe penalty "for the purpose of protecting the public interest so that there may be assurance of the moral fitness and professional responsibility of everyone licensed to practice law in the State." He ordered revocation of Rabideau's license and the other conditions described. Rabideau appealed to this court from the referee's report and disposition, pursuant to SCR 22.17 (1980).

Rabideau has apparently not had any disciplinary matters or complaints before the bar other than the present one, and no other criminal convictions.

Appellant Rabideau raises numerous arguments before this court, challenging both certain aspects of the general operation of the disciplinary rules and the specific terms of the referee's findings and order in this case. We consider these claims *seriatim*.

The first claim is a challenge to the constitutionality of SCR 21.05(1) (1980). That rule provides:

"SCR 21.05 **Grounds for discipline.** An attorney is subject to discipline for misconduct. Misconduct is conduct that violates:
"(1) A criminal statute if the violation involves moral turpitude."

Appellant argues that this rule, pursuant to which the referee found him subject to discipline, provides insufficient notice as to whether or not a particular violation of a criminal statute involves "moral turpitude," and thus that it is void for vagueness, in violation of due process provisions of the United States and Wisconsin Constitutions.[3] We reject this argument, as we re-

---

[3] The complaint in this case filed by the Board of Attorneys Professional Responsibility did not invoke this court rule, but instead alleged that petitioner's conduct was illegal conduct involving moral turpitude "in violation of DR 1–102(A)(3)." That

cently did a similar challenge to the Code of Judicial Ethics, *In Matter of Complaint Against Seraphim*, 97 Wis.2d 485, 497–99, 294 N.W.2d 485 (1980).

The text of SCR 21.05(1) (1980) shows that a violation of a criminal statute does not *ipso facto* justify the imposition of discipline; moral turpitude is also required. This is not a new requirement in the history of attorneys' discipline, but merely a recent codification of a longstanding practice observed by this court and others. As we stated in *State v. Roggensack*, 19 Wis.2d 38, 46, 119 N.W.2d 412 (1963), "[Not] . . . every violation of law by an attorney will subject him to discipline. As a general rule, before such violation will be a ground for discipline it must entail moral turpitude as defined in *State v. McCarthy* . . . ." *See also State v. Postorino*, 53 Wis.2d 412, 415, 193 N.W.2d 1 (1972) ; *In re Richter*, 187 Wis. 490, 504, 204 N.W. 492 (1925) ; Note, *The Imposition of Disciplinary Measures for the Misconduct of Attorneys*, 52 Colo. L. Rev. 1039, 1049 (1952).

The case of *State v. McCarthy*, 255 Wis. 234, 38 N.W. 2d 679 (1949), referred to in *Roggensack, supra,* sets forth what is meant by "moral turpitude." Therein we said:

"In our society moral standards are derived in large part from Christian teaching and are reflected more or less accurately in what is termed 'public opinion,' which is the consensual judgment of the general public . . . .

" . . .

" 'Moral turpitude is an act of baseness, vileness or depravity in the private and social duties which a man

---

disciplinary rule is now found at SCR 20.04(3) (1980), which, under the title, "Misconduct," provides that "A lawyer shall not: . . . Engage in illegal conduct involving moral turpitude." For purposes of notice of the disciplinary charges, there is no material difference in this case between the language of SCR 20.04(3) (1980) ("illegal conduct involving moral turpitude") and SCR 21.05(1) (1980) ("A criminal statute if the violation involves moral turpitude.")

owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.' [citation omitted]
" . . . .
" '. . . . moral turpitude is anything done contrary to justice, honesty, principle or good morals . . . .' [citation omitted]." *Id.* at 248–50.

We recognize, as indeed we did in *State v. McCarthy*, that there is an inherent generality and indefiniteness to the phrase, "moral turpitude." We acknowledged in that case that whether a person's conduct indicates moral turpitude "depends upon the circumstances of each case. The same rule cannot be applied to every case involving a violation of law." *Id.* at 250.

The generality of the concept, however, renders it neither meaningless nor constitutionally infirm as to adequacy of notice.

In the first place, an attorney who knowingly violates *any* criminal statute should not be heard to claim insufficient notice of the general culpability of his conduct, especially in light of the heightened awareness of the law and heightened responsibility to respect it with which an attorney is properly charged. *See* SCR 20.02 (5) (1980) ; *Ex parte Wall*, 107 U.S. 265, 274 (1882).[4]

---

[4] SCR 20.02(5) (1980), Ethical Consideration, provides in part:
"A lawyer should be temperate and dignified and should refrain from all illegal and morally reprehensible conduct. Because of a lawyer's position in society, even minor violations of law by a lawyer may tend to lessen public confidence in the legal profession. Obedience to law exemplifies respect for law. To lawyers especially, respect for the law should be more than a platitude."
Justice Bradley stated in *Ex parte Wall, supra*, 107 U.S. at 274:
"Of all classes and professions, the lawyer is most sacredly bound to uphold the laws. He is their sworn servant; and for him, of all men in the world, to repudiate and override the laws, . . . argues recreancy to his position and office, and sets a pernicious example to the insubordinate and dangerous elements of the body

Any lawyer knowingly engaging in criminally proscribed conduct can properly be charged with an awareness of the possible jeopardy in which such activity may place his professional status.

The secondary inquiry—whether the criminal violation involves moral turpitude—involves a rough, but permissible, assessment of the moral character of the particular criminal activity. Not all "turpitudinous" crimes could reasonably be listed; a fixed list would likely, as applied to particular situations, be both over- and underinclusive. Moreover, the differing moral quality of criminal behavior in various situations necessitates a flexible approach to the assessment of discipline-worthy criminal conduct, one not hamstrung by rigid "laundry lists" of behavior. A responsible attorney should have no cognitive problem recognizing that criminal actions of different sorts may strike a factfinding tribunal as more or less morally reprehensible, and should be able to tailor his own behavior accordingly.

We are satisfied, in light of these considerations, that SCR 21.05(1) (1980) is not unconstitutionally vague.

Appellant makes the related argument that "moral turpitude," the second element of SCR 21.05(1) (1980), is so broad and has been subject to such varying interpretations that it in effect adds nothing to the "violation of a criminal statute" element of the rule; and, hence, disciplinary proceedings based on a criminal conviction in reality amount to reprosecution and repunishment for the same offense which underlies the disciplinary proceeding, in violation of the Wisconsin constitutional provision against double jeopardy, Wis. Const. art. I, sec. 8. That provision states, in relevant

---

politic. It manifests a want of fidelity to the system of lawful government which he has sworn to uphold and preserve." (Quoted in *Roggensack, supra,* 19 Wis.2d at 45.

part, that ". . . no person for the same offense shall be put twice in jeopardy of punishment . . . ."

Our response to this allegation is twofold. First, as we have discussed above, the requirement of moral turpitude is a genuine second element which must be additionally found before discipline may be imposed for misconduct under SCR 21.05(1) (1980); thus, the disciplinary proceeding is not based on "the same" legal charge as the prior, underlying criminal conviction. By analogy to our treatment of lesser-included offenses, the requirement of moral turpitude clearly makes misconduct in violation of SCR 21.05(1) (1980) a different legal entity than the offenses signified by underlying criminal convictions which, as here, contain no statutory element of "moral turpitude." *See Randolph v. State,* 83 Wis.2d 630, 266 N.W.2d 334 (1978); *Hagenkord v. State,* 100 Wis.2d 452, 481, 302 N.W.2d 421 (1981). Identification of this different "element" renders a violation of SCR 21.05(1) (1980) different from the underlying criminal convictions irrespective of "the peculiar facts of a given case." *Randolph, supra,* 83 Wis.2d at 642.

More important, however, is the difference between an attorney disciplinary proceeding, which is not a charge of a criminal offense, and a criminal conviction. Disciplinary proceedings are civil in nature. *Matter of Proceedings Against Sedor,* 73 Wis.2d 629, 636, 245 N.W.2d 895 (1976); *State v. Postorino,* 53 Wis.2d 412, 417, 193 N.W.2d 1 (1972). Disciplinary proceedings do not constitute a second "trial," nor is the sanction which may be imposed a secondary penalty or punishment. Rather, the primary purpose of a disciplinary proceeding is the ascertainment of moral fitness and professional competency of the attorney, and a determination of whether

it is necessary for the protection of the public interest that the attorney be disciplined, suspended, or disbarred. *State v. Corry*, 51 Wis.2d 124, 186 N.W.2d 325 (1971); SCR 21.03(5) (1980).[5] These are public interests not addressed by the underlying criminal proceeding.

Whatever ancillary punitive effects might be said to attach in a practical sense to an attorney's civil disciplinary proceeding do not violate the state constitutional proscription against being put twice in jeopardy of "punishment" for the same "offense."

Appellant also argues that his criminal violations did not, under the circumstances, involve moral turpitude, and thus discipline is unwarranted under SCR 21.05 (1) (1980). The claim that no moral turpitude was evinced rests on several factors.

The first is that the illegal activity did not occur in appellant's professional capacity as an attorney. The record appears to support this claim as a factual matter.[6] This does not, however, *ipso facto* immunize an

---

[5] This rule provides:

"SCR 21.03    **General principles.**

". . . .

"(5) Discipline for misconduct is not intended as punishment for wrongdoing but is for the protection of the public, the courts and the legal profession . . . ."

[6] Nothing in the record ties the conviction for possession of a controlled substance, sec. 161.41(3), Stats., to any activity by the petitioner as an attorney. We accept that the same is true with respect to the charge of contributing to the delinquency of a minor, sec. 947.15(1)(a), Stats. We note, however, as to the latter conviction, that although the youth was not a client of petitioner's at the time of the criminal activity, he had been one within the preceding year, and that petitioner's rationale for sharing marijuana with him was concern for both the youth's welfare and that of the residents of the Sunburst Youth Home, some of whom had also been clients of petitioner. Although we do not base our disposition of this matter on a view that petitioner was acting within a lawyer-client relationship at the time of his transgression, we think the factual background suggests his activities were closer to

attorney from discipline. Some of our earlier cases appear to have attempted to draw a bright line between professional and nonprofessional activity. This approach was expressly overruled in *State v. Roggensack,* 19 Wis.2d 38, 48, 119 N.W.2d 412 (1963). More recently we stated, where an attorney had been convicted of commercial gambling and was before this court on a disciplinary hearing:

"While his conduct is not unprofessional in the strict sense of the word because it did not relate to an activity in a professional capacity, nevertheless, the concept of unprofessional conduct now embraces a broader scope and includes conduct outside the narrow confines of a strictly professional relationship that an attorney has with the court, with another attorney or a client. There are many activities in the minds of the public which a professional man should not undertake because he is a professional man of trust and much is expected of him. A lawyer is a professional man twenty-four hours a day, not eight hours, five days a week." *State v. Postorino,* supra, 53 Wis.2d at 419.[7]

The fact that appellant was not acting in the professional capacity of an attorney when he violated the criminal law of the state does not defeat the imposition of discipline.

---

being in the course of his legal representation than petitioner describes.

[7]. Ethical consideration (5) of SCR 20.02 (1980) provides that a lawyer should "refrain from all illegal and morally reprehensible conduct. Because of a lawyer's position in society, even minor violations of law by a lawyer may tend to lessen public confidence in the legal profession." Although this is not a mandatory provision independently providing grounds for discipline, in enforcing SCR 20.05(1) (1980), we are authorized by SCR 20.002 (1980) to rely on it "for interpretive guidance in the basic principles embodied in the canons and in the objectives reflected in the ethical considerations."

Appellant also argues that there was no moral turpitude here because the prevailing moral sentiment no longer condemns the possession and use of small amounts of marijuana. In light of the continued legislative treatment of marijuana as a Schedule I controlled substance (sec. 161.14(4)(k), Stats.), this claim cannot be sustained. Moreover, this legislative policy judgment distinguishes the offense from one involving alcohol, which appellant proffers as being similar. Whatever may have been appellant's personal preferences and motivations in possessing and sharing marijuana, we cannot, in light of the expressed public policy of the state, hold that his conduct comports with prevailing moral sentiment.

More fundamentally, appellant was convicted not merely of use or possession, but of contributing to the delinquency of a child in violation of sec. 947.15(1)(a), Stats.[8] This is not a "victimless" crime; the statute criminalizing this behavior plainly contemplates that one who engages in such conduct threatens the welfare of a person of tender years. Whether, as appellant argues, the youth herein requested the marijuana, prompting appellant to supply it as "the result of sudden impulse and unexpected provocation resulting in thoughtless commission of the violation without serious thought of the consequences," is not the point. Section 947.15 (1)(a), Stats., prohibits "contributing" to a minor's delinquent behavior just as clearly as it prohibits "encouraging" it. An adult, under the statute, has a duty to refrain from such activity as appellant engaged in.

---

[8] Section 947.15(1)(a), Stats., provides:

"(1) The following persons are guilty of a Class A misdemeanor . . . :

"(a) Any person 18 or older who intentionally encourages or contributes to the delinquency of any child as defined in s. 48.02 (3m) or the neglect of any child . . . ."

There is clearly a moral aspect to this behavior, and under the circumstances it may be characterized as turpitudinous.[9]

We have noted that, at the disciplinary hearing, the Board of Attorneys Professional Responsibility introduced, over objections by the appellant, documents stemming from criminal charges filed against him in Dane county in 1975 relating to several episodes of allegedly taking indecent liberties with children. These matters were reviewed by the bar and this court upon appellant's application and admission to the bar in May of 1978, and did not preclude his admission. Appellant now argues, for numerous reasons, that their consideration in the instant disciplinary proceeding is improper. The central thread in all these arguments is that conduct prior to bar admission, once admission has been granted, cannot properly be taken into account in a disciplinary proceeding for misconduct alleged to have occurred after admission.

---

[9] We note, in addition, that the marijuana was shared while petitioner was driving the youth back to a youth home. We think that this adds another element of moral irresponsibility—the danger, to passengers and other drivers, of driving under the influence, just as in the case of driving under the influence of alcohol. Petitioner cites to us, as authority for the benign effects and quality of marijuana, L. Young, et al., *Recreational Drugs* (1979). While we intimate no position on such matters, we quote from the chapter on marijuana, which otherwise extols the benefits and pleasures of recreational use of the drug:

"It seems safe to recommend that an inexperienced pot user should not drive, or at least should abstain from driving until he gets used to the drug's effects. There is no doubt that marijuana alters perceptions and reflexes, and both are needed to drive safely. Some claim that experienced drivers can, however, call upon their compensation factor and drive confidently, without noticeable impairment. But, your best bet is to avoid all intoxicants, if possible, when getting behind the wheel. If the thought of driving stoned makes you feel uncomfortable, listen to your head and give the car keys to a friend." *Id.* at 140.

At the outset, we observe that the Board's complaint, and the referee's findings, were careful to limit consideration of these 1975 charges to the proper discipline to be imposed, rather than as substantive evidence of appellant's present wrongdoing as an attorney. Thus appellant's first objection—that, under SCR 21.05(1) (1980), pre-bar admission conduct cannot be the "subject" of disciplinary proceedings for attorney misconduct —does not accurately describe the purposes for which the 1975 records were admitted and considered. We note, moreover, that evidentiary rules of relevance applicable to criminal proof of guilt, or establishment of civil liability, in normal litigation, are not in any event entirely applicable to the attorney disciplinary process. Prior conduct occurring before bar admission may be relevant to the choice of discipline, and even to questions of character, which might be inappropriate to consider in other proceedings given the different nature and purpose of disciplining an attorney.

Appellant argues that admission and consideration of his 1975 encounters with the criminal law constitute an *ex post facto* application of SCR 21.05(1) (1980), in violation of Wis. Const. art. I, sec. 12, and United States Const. art. I, sec. 10, cl. 1.[10] As we have recently held, however, there is no *ex post facto* prohibition except in criminal proceedings or matters where penalty or punishment is imposed. *See In Matter of Guardianship of Nelson*, 98 Wis.2d 260, 272–74, 296 N.W.2d 736 (1980); *see also In Matter of Complaint Against Seraphim*, 97 Wis.2d 485, 493–95, 294 N.W.2d 485 (1980). We pointed out earlier that attorney disciplinary proceedings are neither criminal nor punitive, but instead aimed at regu-

---

[10] "Section 10. No state shall . . . pass any bill of attainder, ex post facto law . . . ."

lating the profession and protecting the public. Moreover, the 1975 criminal charges in this case are not, standing alone, any sort of basis for the present disciplinary proceedings; absent the post-bar admission convictions, this action would never have been initiated.

Appellant further argues that since this court once ruled that an attorney's good behavior, prior to bar admission, would not be considered in mitigation of a subsequent disciplinary proceeding,[11] notions of equal protection are violated by consideration, during disciplinary proceedings, of bad behavior occurring prior to bar admission. This rather generalized contention ignores the rational basis which supports the differing permissible use of prior conduct evidence—the profession is properly concerned about the moral character of its members, as to which patterns of misconduct, regardless of when they occur, may become relevant to tailoring disciplinary measures; whereas good behavior prior to bar admission is no guarantee of later propriety, nor does it diminish the severity of a transgression occurring after admission.

Appellant also argues that the 1975 matters are "res judicata" and may not be reviewed again because they were considered upon his application to the bar and were found not sufficiently flagrant to prohibit his admission in 1978. We reject any implication that the Board of Attorneys Professional Responsibility or this court, by virtue of having once evaluated an attorney's or bar applicant's conduct with an eye to his character and fitness to practice law, loses its authority to review that behavior again upon, and in light of, subsequent misconduct. Nor are we precluded from considering the 1975 matters by the terms of the stipulation entered on January 22, 1976, between appellant and the district attorney for Dane county. That agreement stated that the

[11] *State v. Cannon*, 199 Wis. 401, 226 N.W. 385 (1929).

district attorney's files would be available to the State Bar or this court "for their consideration in determining whether the defendant qualifies to practice law in the State of Wisconsin."[12] Petitioner argues that this language was intended and understood to apply only to bar admission and thus cannot support consideration of the 1975 matters now; the Board contends that the language, "qualifies to practice," applies generally, without any such limitation, and thus authorizes consideration of these matters in the present proceeding.

We need not decide which view characterizes the intent of the parties to the agreement. The authority of the bar and this court to consider matters pertaining to the qualification to practice law cannot be "waived" or determined by other parties. Moreover, once considered in the initial determination of bar eligibility, the "cognizance" of the bar and this court over such matters is not lost by the mere fact of admission. If relevant to the question of initial eligibility, such matters may well be relevant to later disciplinary proceedings, due to the bar's continuing interest in the qualifications of its members; the authority to consider such matters is a continuing one.

Appellant next argues that the revocation of his license to practice law, as ordered by the referee, is too harsh a discipline under the circumstances presented in this case, and that a private reprimand is all that is appropriate.[13]

---

[12] The agreement, entered on January 22, 1976, by its terms "expired" eighteen months later, or July 22, 1977. Petitioner argues that it therefore cannot now be considered. This "expiration date," however, appears to refer to the time after which the district attorney agreed he would not press criminal charges. Thus it does not bar subsequent consideration of the documents for professional disciplinary purposes.

[13] "SCR 21.06  **Types of discipline.**  Misconduct is grounds for one or more of the following types of discipline:

While we do not accept the idea that a reprimand would be sufficient, we agree that revocation of appellant's license is an inappropriate disciplinary sanction.

The bar, and this court, accepted appellant in 1978 as fit for the practice of law despite his prior misconduct in 1975. Although one of the two 1979 criminal convictions which prompted the present disciplinary proceeding involved a juvenile, there is no allegation, and the record supports no inference, that this conduct was of the same nature as the 1975 behavior involving juveniles. While appellant's criminal conduct bespeaks unusually bad judgment and evinces the requisite moral turpitude under SCR 21.05(1) (1980) to justify discipline, it does not appear to implicate his technical competence as an attorney. There is no evidence that appellant has engaged in moral or legal misconduct of any other type or nature since his admission to the bar. While it is unclear from the record whether appellant is penitent in the sense of a revised or reformed personal moral view of his activities, he appears to understand the professional impropriety of his activity and its societal unacceptability.

Criminally and morally culpable and foolish as were appellant's activities, they were not of the same nature or severity as were the prior acts which the bar and this court found were not grounds to prevent his becoming a member of the bar.

We think a suspension of appellant's license for three years will adequately serve the interests to be protected by the attorneys' disciplinary process, and we accord-

---

"(1) Revocation of license to practice law (disbarment).

"(2) Suspension of license to practice law, including the imposition of conditions upon seeking reinstatement of the license.

"(3) Monetary payment.

"(4) Public, private or informal reprimand.

"(5) Conditions upon the continued practice of law."

ingly modify the revocation imposed by the referee. The three years is deemed to have begun running on August 20, 1980, the date the referee issued his report. *See* SCR 22.17(2) (1980).

We remain concerned, however, about appellant's character and moral fitness to practice law. It is in this connection that consideration of the 1975 activities is relevant to our disciplinary disposition of the case. We think that, viewed together, the 1975 conduct and the 1979 criminal convictions raise serious questions about appellant's judgment and psychological fitness, which are relevant to the moral qualities an attorney must possess. We therefore order, pursuant to SCR 21.06(2) (1980), that as conditions upon seeking reinstatement, appellant demonstrate both professional and psychiatric evidence of his fitness to practice law in this state. This will involve inquiry by both the Board of Attorneys Professional Responsibility and the Board of Attorneys Professional Competence, and the report and recommendation of both boards to this court, in accordance with SCR 21.11 (1980), prior to our ruling on such petition for reinstatement. If appellant decides to seek reinstatement, we authorize him, pursuant to SCR 22.28(4) (b) (1980), to file his petition therefor with this court six months prior to the elapsing of his three years' suspension, in order that the indicated investigations may be timely made. We note the relevance of present and future compliance with the terms of SCR's 22.26 and 22.28 (1980) to any petition for reinstatement.

The referee imposed on appellant the costs of the proceeding, not to exceed $1,000, to be paid within one year from August 20, 1980, and as a condition of application for reinstatement. Appellant alleges that this amount includes attorney fees, which, he correctly argues, would

be impermissible.[14] We have undertaken an independent review of the itemized costs, however, and find that they exceed $1,000 exclusive of attorney fees. We therefore uphold the referee's imposition of costs not in excess of $1,000. Appellant's claim that payment of costs, once imposed, may not properly be made a condition of reinstatement, is unsupported by our rules on this matter.[15]

The referee further, however, imposed as a condition of reinstatement the proof of payment in full of $2,500 in fines, $250 in a penalty assessment (whose existence is disputed), and $9 in court costs, alleged to have been imposed pursuant to the 1979 Clark county criminal convictions. These are matters bearing on the appellant's relationship to a trial court as a convicted private citizen. That court has the ability satisfactorily to supervise the terms, conditions, and enforcement of its own judgments; and its prerogative to do so to its satisfaction should not be supplanted by the bar or by this court in a disciplinary proceeding. We therefore hold that proof of compliance with the terms (both agreed and disputed) of such judgments was not a proper condition of reinstatement, and vacate the portion of the

---

[14] Attorney fees are not properly chargeable to the respondent in a disciplinary proceeding. *State v. Postorino*, 53 Wis.2d 412, 420, 193 N.W.2d 1 (1972); *State v. Preston*, 38 Wis.2d 582, 588e, 157 N.W.2d 615 (1968). SCR's 21.12, 22.19 and 22.20 (1980) continue this policy, and are unaffected in this respect by new SCR 22.01(6m), created by order of this court on December 29, 1980, defining "costs" in some detail but not mentioning attorney fees.

[15] Appellant argues that it was *ultra vires* for the referee to make the payment of costs (pursuant to disbarment under SCR 21.06(1) (1980)) a condition of reinstatement. Since imposition of such costs is authorized by SCR 22.20 (1980), however, payment thereof is properly a condition of reinstatement by virtue of SCR's 22.26(4) (a), (7) and 22.28(4) (d) (1980).

referee's order relating to the judgment in the underlying criminal prosecution, leaving their resolution to the circuit court for Clark county. The trial court's satisfaction, however, that an attorney convicted in its court has complied with the terms and conditions of a judgment may well be relevant to an application for reinstatement, and we do not imply that these matters may not be reviewed from that perspective at such time as application for reinstatement may be made.

It is ordered that appellant's license to practice law in this state is suspended for three years effective August 20, 1980, with conditions on application for reinstatement as stated in this opinion. The referee's imposition of the costs of the instant disciplinary proceeding, not to exceed $1,000, payable within one year from August 20, 1980, and as a condition of application for reinstatement, is affirmed. The referee's order with respect to the underlying criminal conviction is vacated.

ABRAHAMSON, J., took no part.