In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2069

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GEORGE W. CURTIS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 1:13-cr-00113-WCG— **William C. Griesbach**, *Chief Judge.*

ARGUED DECEMBER 3, 2014 — DECIDED MARCH 31, 2015

Before MANION, ROVNER, and HAMILTON, *Circuit Judges.*

ROVNER, *Circuit Judge.* George W. Curtis was convicted of three misdemeanor counts of failure to pay income taxes, in violation of 26 U.S.C. § 7203. On appeal, he contends that the district court abused its discretion in admitting evidence of other wrongdoing and in instructing the jury on the meaning of "willfulness." We affirm.

**I.**

George W. Curtis has been a lawyer for more than fifty years. He was running his successful law practice as a sole proprietorship at the time of the events relevant to this appeal. His tax difficulties began in 1996 and 1997, when he filed returns reporting tax obligations of $218,983 and $248,236, respectively, but made no payments toward those debts. According to Curtis, around that time, a law partner withdrew money from the practice and declared bankruptcy without ever repaying the debt of nearly $600,000. Curtis also underwent an expensive divorce during this time period. In 1999, when the Internal Revenue Service ("IRS") noticed that Curtis still had not paid the taxes for 1996 and 1997 and had failed to file a return for 1998, the agency assigned Revenue Officer Pamela Pfeffer to address Curtis's issues. As a result, Curtis entered into an installment agreement with the IRS, making monthly payments toward his outstanding tax debt. Not surprisingly, the amount owed was increased by interest and penalties. The IRS warned Curtis that he would be required to make estimated tax payments going forward.

In 2003, Revenue Officer Pfeffer again worked with Curtis in an attempt to bring his tax obligations current after he filed a return for 2000 but failed to pay more than $90,000 in taxes owed. He entered into a second installment agreement to pay those taxes as well as an amount remaining from 1997. He was again reminded of his obligation to make estimated payments going forward. Notwithstanding that reminder, shortly after agreeing to the second installment plan, he filed a return for 2003 reflecting an unpaid tax liability of $176,802. Pfeffer again contacted him to discuss options for paying the taxes, including

reducing his personal expenses or selling assets. Nevertheless, he filed a return for 2004 reflecting an unpaid tax liability of $61,000.

In February 2006, after Pfeffer retired from the IRS, the agency assigned a second Revenue Officer, Hans Bichler, to work with Curtis. Curtis failed to make estimated payments for that year and had stopped making payments on the installment plan. At the time, Curtis had outstanding tax obligations for 1997, 2000, 2003 and 2004. In 2006, Curtis made some progress in paying off his pending tax debts. He paid $65,000 toward his 2005 liabilities, and another $42,000 to finally satisfy the 1997 debt. In 2007, Curtis sold some real estate and Revenue Officer Bichler applied $167,000 from the sale to resolve Curtis's 2000 tax debt.

But that was not the end of Curtis's tax woes. He timely filed returns for 2007, 2008 and 2009, years for which he owed $151,906, $113,354, and $112,973, respectively, but he had paid nothing toward these liabilities at the time of filing. By this time, Revenue Officer Bichler had also retired from the IRS, and no new agent was assigned to address Curtis's liabilities. Instead, the IRS referred the matter for criminal investigation, and Curtis was charged with three misdemeanor counts of willfully failing to pay the taxes he owed for 2007, 2008 and 2009, in violation of 26 U.S.C. § 7203.

Prior to trial, the government indicated its intention to offer evidence under Rule 404(b), including evidence of Curtis's history of failing to pay his taxes, his past dealings with the IRS and its efforts to collect back taxes, and his withdrawals of money from his law practice to pay personal expenses. Curtis

did not object to any of this evidence, conceding that it was relevant to his intent and knowledge during the charged years. But he did object to the government's proposed evidence that he failed to pay payroll taxes for his law firms's employees for the third and fourth quarters of 2013. The government argued that this evidence was relevant to Curtis's intent and especially relevant to rebut his anticipated defense that he acted in good faith. Curtis objected that any violations of the tax laws subsequent to the charged years did not bear on his state of mind during the time of the charged offenses. Instead, he maintained, the government's use of this evidence demonstrated nothing other than propensity to commit the crime, a forbidden use of such evidence. Curtis also argued that the evidence was not relevant to his intent because payroll taxes are different in kind from income taxes, payroll taxes are often paid by office administrators, and the failure to pay those taxes post-dated the offense conduct by several years. The evidence would also cause undue prejudice, Curtis argued, because it would imply that he was harming his employees as well as the government. In short, he contended that the payroll tax evidence did not meet the standards for admission under Rule 404(b). The district court agreed that the evidence demonstrated propensity, and tentatively granted Curtis's motion to exclude the payroll tax evidence from the trial.

The court later reversed course and allowed the government to bring in this evidence after Curtis testified during the defense case-in-chief that he was current on his tax obligations for 2010, 2011 and 2012. Curtis declined the court's offer of a limiting instruction on this Rule 404(b) evidence. As we will discuss below, Curtis asked the court to instruct the jury that willful-

ness required proof of a bad motive. He also asked the court to give an instruction on good faith. Although the court gave Curtis's proposed instruction on good faith, it declined to modify the pattern instruction to include a requirement for bad motive, instead using the pattern instruction on willfulness. The jury convicted on all three counts, and Curtis appeals.

## II.

On appeal, Curtis first contends that the court erred when it allowed the government to admit evidence that he had not paid payroll taxes for two quarters in 2013. He also maintains that the court abused its discretion when it declined to give the willfulness instruction he requested and instead gave the pattern instruction. We review the district court's decision to admit evidence under Rule 404(b) for abuse of discretion only. *United States v. Johnson*, 584 F.3d 731, 736 (7th Cir. 2009). "We review jury instructions *de novo*, but we will reverse a conviction only if the instructions as a whole misled the jury as to the applicable law." *United States v. Simon*, 727 F.3d 682, 698 (7th Cir. 2013); *United States v. Joshua*, 648 F.3d 547, 554 (7th Cir. 2011).

## A.

Curtis faced three counts of willful failure to pay tax, in violation of 26 U.S.C. § 7203. To sustain a conviction under section 7203, the government was required to prove: (1) that Curtis was required to pay taxes; (2) that Curtis failed to pay the taxes; and (3) that Curtis acted willfully in failing to pay. *United States v. Hassebrock*, 663 F.3d 906, 919 (7th Cir. 2011); *United States v. Beall*, 970 F.2d 343, 347 (7th Cir. 1992). Curtis conceded that he was required to pay taxes for the three charged years

and that he failed to pay them. At trial, he contested only the element of willfulness. Failure to pay taxes under section 7203 is a specific intent crime. *United States v. Birkenstock*, 823 F.2d 1026, 1028 (7th Cir. 1987). In criminal tax cases, willfulness "requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991). *See also United States v. Pomponio*, 429 U.S. 10, 12 (1976) (the word "willfully" in the tax statutes "generally connotes a voluntary, intentional violation of a known legal duty"); *Birkenstock*, 823 F.2d at 1028 (the willfulness element in section 7203 requires proof of an intentional violation of a known legal duty).

As we noted above, the district court tentatively concluded before trial that the government could not introduce evidence of Curtis's failure to pay payroll taxes for his law business in the third and fourth quarters of 2013. Although the government sought to introduce the evidence to demonstrate Curtis's willfulness in failing to pay his taxes, the court concluded that the evidence appeared to prove that point only by way of a propensity inference, in violation of Rule 404(b). The court also opined that the potential for unfair prejudice outweighed the probative value of the evidence. *See* Fed. R. Evid. 403.

But the court reversed course during the defense case-in-chief after Curtis's counsel posed several questions to Curtis regarding a summary exhibit for tax years 1996 through 2012. For each of those years, Exhibit 1000 listed, among other things, the amount of taxes owed, penalties and interest accrued, taxes paid toward the year's liabilities, the year paid, and whether the

taxes for a given year were fully satisfied. For example, the first row, representing 1996, showed $555,320.00 in taxable income; $218,983.00 in taxes owed; $112,080.74 in penalties; $71,618.79 in interest; $402,682.53 as the total owed and the total paid; 2001 as the year the amount was paid in full; and $0 as the amount paid during the year the taxes were due. The chart also showed that tax years 2003, 2004, 2007, 2008 and 2009 were not paid in full as of the time of trial, and in fact, Curtis had made no payments toward the obligations for the charged years of 2007 through 2009. Finally, the chart indicated that Curtis paid his taxes in full for tax years 2010, 2011 and 2012, completing each year's payments during the subsequent year. With this exhibit before the jury, defense counsel engaged in the following exchange with Curtis:

> Q: And as Exhibit No. 1000 indicates—And do you have that in front of you?
>
> A: I do.
>
> Q: Your tax obligations for the years 2010, 2011, and 2012 are fully paid; is that correct?
>
> A: That's what the record shows.
>
> Q: And—and do you still have significant obligations with respect to the charged years here and some obligation with respect to the—a couple of years earlier than that? Is that also true?
>
> A: That's what the record shows.
>
> Q: And during the period of time for the years that are reflected in Exhibit No. 1000 you agree with the fact that you paid almost $2 million to the

IRS and your tax obligations for that same period of time were something just short of $1,900,000?

A:   That's right. I—I paid 1.917,807.

Q:   Can you tell the court and jury whether or not you believed that you would have the capacity through one method or another of adjusting your living style which may even mean liquidating assets, that you were going to liquidate all of the tax liabilities that were reflected on your tax returns for the years 2007, 2008, 2009, and any other years for which there remained a delinquency?

A:   Absolutely. That was discussed with Mr. Bichler. And I believe that the 167 grand that I engineered in selling those two properties would certainly take care of more than one of those years and that David had already made an agreement to buy an additional chunk of land for a quarter million dollars.

Q:   Was there ever a time during the period of your dealing with the collection agents when you believe[d] that your tardiness in making your tax payment would bring you to court as a defendant in a criminal case?

A:   Absolutely not. I felt I had a very positive understanding relationship with both Pam and Hans, who were sometimes complimentary

> about my efforts. I just candidly discussed how things were going. I had listed our properties with three different Realtors, reported to them the snags, and they encouraged me.

R. 51, Tr. at 529-31.

Following this exchange, the government again moved to admit evidence that Curtis had failed to pay payroll taxes for his law firm's employees in the last two quarters of 2013. The government argued that Curtis's proposed jury instructions suggested that he would claim a defense of mistake, and that the evidence that he had recently failed to pay taxes was relevant to show that his earlier failure to pay was not due to a mistake. The government also contended that Curtis's testimony that he had fully paid his 2010, 2011 and 2012 taxes implied to the jury that he was current with his recent tax obligations when he in fact was not; he had failed to turn over to the IRS the payroll taxes that he had withheld from employees in the last two quarters of 2013. Curtis countered that income taxes and payroll taxes are different in kind, that the charged conduct was too remote in time from the payroll tax evidence, and that this evidence was in actuality propensity evidence. The court ultimately ruled that Curtis opened the door to admission of the evidence by suggesting to the jury that he had paid in full his recent tax obligations. The government then questioned Curtis about his failure to pay the payroll taxes. R. 51, Tr. at 568-72. Specifically, the government questioned Curtis regarding how he spent money that he withdrew from his law firm and how he decided which bills to pay. The focus of the questioning was that Curtis chose repeatedly to pay other obligations instead of paying taxes, including the payroll taxes.

The government made no further mention of Curtis's failure to pay the payroll taxes in two quarters of 2013.

After the trial, we clarified the law governing Rule 404(b) evidence in an *en banc* opinion in *United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014):

> In sum, to overcome an opponent's objection to the introduction of other-act evidence, the proponent of the evidence must first establish that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way. *See* Fed.R.Evid. 401, 402, 404(b). Other-act evidence need not be excluded whenever a propensity inference can be drawn. But its relevance to "another purpose" must be established through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case. If the proponent can make this initial showing, the district court must in every case assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice and may exclude the evidence under Rule 403 if the risk is too great. The court's Rule 403 balancing should take account of the extent to which the non-propensity fact for which the evidence is offered actually is at issue in the case.

*Gomez*, 763 F.3d at 860.

The government offered two reasons in support of admitting the payroll tax evidence, neither of which relied on a forbidden

inference that Curtis had a certain character and acted in accordance with that character during the three charged counts. First, the evidence was relevant to rebut the implication that Curtis had fully paid his recent tax obligations. As his counsel conceded at oral argument, his testimony that he had fully paid his 2010, 2011 and 2012 taxes was not generally relevant to his intent for the charged years. In essence, though, that testimony implied that his recent compliance demonstrated good faith. With Curtis having opened the door to the relevance of his tax-paying behavior after the charged conduct, the district court did not abuse its discretion when it ruled that the government was free to walk through that door. *See United States v. Schmitt*, 770 F.3d 524, 536 (7th Cir. 2014), *cert. denied*, — U.S. —; 2015 WL 998658 (Mar. 9, 2015) (a defendant "opens the door" to otherwise inadmissible evidence when he affirmatively and genuinely places at issue the specific matter that the evidence is being offered to establish). And the government used that evidence in a manner that did not raise the wrongful propensity inference. Instead, the government simply noted that Curtis had used his earnings from his law firm to pay other expenses and had neglected to pay the payroll taxes. When Curtis implied that he was up-to-date with his tax obligations in 2010, 2011 and 2012 (some of which he paid in 2013), he placed at issue his non-payment of other taxes in that same time frame.

The payroll tax evidence was also relevant to Curtis's anticipated defense that he acted with a good faith misunderstanding when he failed to pay his taxes in the charged years. Curtis contended in his defense that he mistakenly believed he was in compliance because IRS agents allowed him repeatedly to negotiate late payments through installment plans. *See* R. 51,

Tr. at 648 (where defense counsel argued in closing: "And it is the defense in this case that George Curtis, by reason of his experience with the Internal Revenue Service, had a good faith understanding that his paying his taxes in an untimely fashion was okay. It was not a crime."). Had he known that he was violating a criminal law, he implied, he would have paid his taxes. That theory was refuted by evidence that he failed to pay his payroll taxes even after he had been charged with a crime for failing to pay income taxes, at a time when he could no longer claim a good faith belief that late payments constituted compliance with criminal laws. Although income taxes and payroll taxes are different in kind, as a sole proprietor of his law firm, Curtis was personally responsible for paying the payroll taxes in the same way he was personally responsible for paying his income taxes. And contrary to his claim that the incidents were too far apart in time to be relevant, Curtis's failure to pay the payroll taxes was essentially contemporaneous with late payments he made on his 2012 income taxes. Finally, this evidence was highly relevant to the sole issue in the trial, Curtis's intent. In short, the court did not abuse its discretion by allowing the evidence.

True, the district court could have explained its reasoning more fully on the record. As we said in *Gomez*, the court must, in every case, "assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice and may exclude the evidence under Rule 403 if the risk is too great." 763 F.3d at 860. *Gomez* was decided after Curtis's trial and so the district court did not have the benefit of its reasoning. The court did not expressly engage in that analysis on the record here, but any error was harmless. *See*

Fed. R. Crim. P. 52(a); *Gomez*, 763 F.3d at 863 (evidentiary errors are subject to review for harmlessness). The test for harmless error is whether, in the mind of the average juror, the prosecution's case would have been significantly less persuasive had the improper evidence been excluded. *Simon*, 727 F.3d at 697; *United States v. Klebig*, 600 F.3d 700, 722 (7th Cir. 2009). The government produced substantial evidence that Curtis knew he was obligated to pay his taxes, had the money to do so, and chose to use that money to pay for other things instead. The payroll tax evidence was lost in a sea of far more damning evidence demonstrating Curtis's intent. For example, during the three charged years, Curtis had adjusted gross income of more than $1.4 million but paid none of it toward his corresponding tax liabilities of approximately $378,000 for that same time period. Instead, he spent more than $1.1 million on personal expenses that included $142,916 in life insurance premiums; $43,266 for a new Lincoln Navigator luxury SUV; $17,730 worth of wine; $32,775 in donations and political contributions; $6,945 on jewelry; and $10,891 on his pets. Presented with these expenditures and a list that also included gifts, firearms, restaurants, department stores, and other purely discretionary spending, any jury would conclude that Curtis had the money to pay his taxes (at least in part) and simply chose not to. The government's case would have been equally persuasive without the payroll tax evidence. Any error was therefore harmless.

**B.**

We can dispense with Curtis's remaining issue in short order. He asked the court to modify the pattern jury instruction for willfulness to include a requirement that the government prove that he acted with a bad motive or purpose. He also

asked for an instruction regarding his defense of good faith. The court gave the requested good faith instruction but declined to modify the pattern instruction. And the court was correct to do so. The Supreme Court has expressly rejected a formulation of the willfulness instruction that requires anything more than proof of a voluntary, intentional violation of a known legal duty. *Pomponio*, 429 U.S. at 12. The Court in fact rejected a court of appeals holding that the criminal tax statute required "a finding of a bad purpose or evil motive." 429 U.S. at 11. More recently, in *Cheek*, the Supreme Court again stated a formulation of the meaning of "willfulness" that required "the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Cheek*, 498 U.S. at 201. It is not necessary for the government to prove more than this and the district court was correct to reject Curtis's proposed instruction. In any case, the court's good faith instruction was sufficient to address his asserted defense. As the instructions given were a correct statement of the law, the court did not err. *Simon*, 727 F.3d at 698; *Joshua*, 648 F.3d at 554.

AFFIRMED.