In the

# United States Court of Appeals

## For the Seventh Circuit

───────────────

No. 15-3663

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JOSE J. URENA,

*Defendant-Appellant*.

───────────────

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13-cr-297 — **Gary Feinerman**, *Judge*.

───────────────

ARGUED DECEMBER 5, 2016 — DECIDED DECEMBER 22, 2016

───────────────

Before EASTERBROOK and ROVNER, *Circuit Judges*, and
SHADID, *Chief District Court Judge*.[*]

SHADID, *Chief District Court Judge*. Jose Urena, who was
born in and is a citizen of Mexico, was indicted on one count
of being an alien found in the United States after having been
previously deported, in violation of 8 U.S.C. § 1326(a).

───────────────

[*] Of the Central District of Illinois, sitting by designation.

The indictment alleged that Urena had been deported and removed from the United States on March 4, 2011, and that he was found in Kane County, Illinois on November 26, 2012, without previously having obtained the express consent of the Secretary of Homeland Security to be admitted into the United States. Urena was convicted at a jury trial held in the Northern District of Illinois and was sentenced to the custody of the Bureau of Prisons for a period of 100 months, followed by a three-year term of supervised release. Urena was also directed, at the term of his prison sentence, to surrender to an authorized official of the Homeland Security Department for a determination on the issue of deportability.

Urena appeals raising two issues. First, Urena appeals the District Court's refusal to exclude evidence of Urena's seven prior removals under Rule 404(b) of the Federal Rules of Evidence. Second, Urena appeals the District Court's denial of Urena's Motion for a Mistrial after the prosecution published to the jury an exhibit that included the fact of Urena's prior conviction for "Felony Class 4 Cocaine Possession." The Court will address both issues in turn.

Exclusion of evidence pursuant to Rule 404(b) is reviewed for abuse of discretion. *United States v. Curtis*, 781 F.3d 904, 907 (7th Cir. 2015).

At trial the government called Erwin Paz, the Immigration and Customs Enforcement agent who testified as to the contents of Urena's 'A' file.[1] Agent Paz testified that Urena had received a written warning at the time of his removal from the

---

[1] Individual alien case files (A–files) became the official file for all immigration records created or consolidated after April 1, 1944. 8 C.F.R. § 103.39.

United States on March 4, 2011, and that Urena was not allowed to reenter the United States without the permission from the Department of Homeland Security or the Attorney General. The written warning was admitted at trial as government's Exhibit 7.

Not having the necessary approval is an element of the offense. 8 U.S.C. § 1326; *see also United States v. Rea-Beltran*, 457 F.3d 695, 702 (7th Cir. 2006), *citing United States v. Torres*, 383 F.3d 92, 95 (3d Cir. 2004). (Under 8 U.S.C. § 1326(a), "the government must establish: (1) that the defendant is an alien; (2) that the defendant was deported or removed in accordance with a valid deportation order; and (3) that the defendant has reentered the United States without the permission of the Attorney General.")

On cross examination, defense counsel questioned Agent Paz whether government's Exhibit 7 was in English. Agent Paz answered that the oral statements were communicated to Urena in English. On redirect, Agent Paz testified he spoke with Urena in English.

Outside the presence of the jury the government argued the door had been opened as to Urena's ability to understand English and sought introduction of evidence that Urena had been removed from the United States on seven previous occasions.

The defense objected to the admission, and instead offered to stipulate that Urena spoke English. The District Court found the defense's proposed solution did not completely take care of the problem, finding the issue raised as a result of the defense's questioning "is not how well Urena understood

English. It's whether he understood that he was not to return to the United States."

After a Rule 404(b) analysis the District Court allowed evidence of Urena's seven prior removals, finding "the only conceivable purpose of asking that question was to suggest that the defendant didn't know he couldn't come back," and further finding "the government was entitled to the curative steps."

We agree with the District Court's analysis.

In *United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014) (en banc), the Court clarified the law governing exclusion of other acts evidence under Rule 404(b). Such evidence is not admissible to prove character, or propensity to act in a certain way, but it is admissible for other purposes, including when offered in a criminal case to prove knowledge. Its relevance for a proper purpose must be clear through a propensity-free chain of reasoning. *Gomez*, 763 F.3d at 860.

If the proponent satisfies the initial burden, the District Court must then undertake an analysis under Rule 403 of the Federal Rules of Evidence to determine whether the probative value of the evidence is substantially outweighed by the risk of unfair prejudice, taking into account the extent to which the non-propensity purpose is actually at issue in the case.

Here, the District Court first found a specific non-propensity purpose for the evidence of prior removals sought to be introduced by the government. Given the cross-examination question from defense counsel, the District Court could properly conclude the defense would include "the fact that [Urena] kept coming back must mean that he didn't under-

stand that he wasn't supposed to come back, because if he understood that he wasn't supposed to come back, he wouldn't have come back all those times." Parenthetically, while knowledge is not an element of the offense, defense counsel attempted to raise the issue to at least offer some defense to an otherwise overwhelming case. See, e.g., *United States v. Carlos-Colmenares*, 253 F.3d 276, 278 (7th Cir. 2001) ("The statute is limited to persons who have previously been deported from the United States. They are persons who were in this country illegally, and obviously knew it when they were deported."). The proffered evidence was correctly deemed probative of Urena's knowledge that he could not lawfully reenter the United States without permission. The District Court then found the probative value of the evidence did not depend on a propensity inference. Urena's repeated prior removals following reentry established his knowledge.

Finally, the District Court conducted an appropriate Rule 403 analysis, finding the question on cross raised the issue of whether Urena understood the warning he was given at the time of his removal on March 4, 2011. The District Court specifically concluded "[t]he reason that the evidence is not unfairly prejudicial is because of the seed that is now planted in the jury's mind regarding [Urena] being given this warning in English." It was not "unfair" when the issue was raised by defense counsel as part of his trial strategy.

Next we turn to government's Exhibit 18, and the prior conviction for possession of cocaine.

As part of the testimony of Agent Paz, the government presented Exhibit 18, "Record of Sworn Statement of Urena," dated February 3, 2004. The document contains four pages of form questions and handwritten answers by Urena created

during his 2004 interview. The questions were presented on the form in both English and Spanish.

Question 13 on page 3 of the document asked whether Urena had been convicted of a serious criminal offense. The handwritten answer to the question was "Felony Class 4 Cocaine Possession."

During the questioning the defense appropriately requested a sidebar. At the sidebar the defense counsel argued the admission of such evidence was "wildly" prejudicial. The defense then moved for a mistrial. The government responded that the exhibit was already in evidence and argued the purpose of the exhibit was to show that Urena was interviewed and understood the questions being asked.

Defendant argues here that the failure of the government to redact before publishing the exhibit constitutes "unfair prejudice," and suggests the "prosecution felt such unfairly prejudicial irrelevant evidence was necessary to sway the jury to obtain the desired verdict. Otherwise there is no reason for its interjection." The government responds that the District Court attributed no such motive to the government and argues here that the jury's exposure to inadmissible information can be harmless if the properly admitted evidence of guilt is so overwhelming. *United States v. Harmon*, 721 F.3d 877, 888 (7th Cir. 2013).

Under the circumstances found here, in spite of the government's attempt to admit what is clearly inadmissible evidence, the District Court properly denied the motion for a mistrial. The District Court was in the best position to find the jury's attention had not been drawn to the third page of the document. The District Court reasoned that because the court

itself had not noticed the information until it was brought to its attention, it doubted the jury had either. The District Court also commented the document was only presented for a short period of time. The District Court then properly ordered question 13 redacted from the Exhibit. The likelihood of an error resulting in an unfair trial is reduced when the district court acts promptly to prevent further damage, and the prosecution is prevented from further reliance on the erroneously admitted information. *Greer v. Miller*, 483 U.S. 756, 764–766 (1987). The District Court's prompt and corrective action prevented an unfair trial.

AFFIRMED