# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP1567-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against George W. Curtis, Jr., Attorney at Law: |
| | Office of Lawyer Regulation, |
| | Complainant, |
| | v. |
| | George W. Curtis, Jr., |
| | Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST CURTIS, JR.

| | |
|---|---|
| OPINION FILED: | February 15, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2015AP1567-D

STATE OF WISCONSIN : IN SUPREME COURT

**In the Matter of Disciplinary Proceedings
Against George W. Curtis, Jr., Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant,**

  **v.**

**George W. Curtis, Jr.,**

      **Respondent.**

**FILED**

**FEB 15, 2018**

Diane M. Fremgen
Acting Clerk of
Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. We review the report of the referee, Richard M. Esenberg, regarding the Office of Lawyer Regulation's (OLR) complaint in this matter against Attorney George W. Curtis, Jr. At all times relevant to this matter, Attorney Curtis operated the Curtis Law Office in Oshkosh, Wisconsin (hereafter, the "firm"), as a sole proprietorship. The referee recommended that Attorney Curtis be suspended for 120 days in connection with his willful failure to pay his personal income

taxes for several years and for various trust account violations committed at his firm. The referee recommended the dismissal of three counts of misconduct: one related to his trust account record keeping, another related to his failure to remit employee and employer contributions to his law firm's 401(k) plan, and another related to his failure to remit payroll taxes for his firm's employees. The referee proposed that the court place certain conditions on Attorney Curtis' post-suspension practice of law, and that the court reduce the full costs of this proceeding ($16,886.87 as of October 31, 2017) by one-quarter. The OLR did not seek the payment of restitution in these proceedings, and the referee did not recommend it.

¶2 Because no appeal has been filed, we review the referee's report pursuant to Supreme Court Rule (SCR) 22.17(2). After conducting our independent review of the matter, we adopt the referee's findings of fact and conclusions of law. We agree with the referee that Attorney Curtis' license to practice law in Wisconsin should be suspended for a four-month period. We also agree with the referee that Attorney Curtis should be required to pay three-quarters of the costs of this proceeding, which will result in a cost assessment of $12,665.15. We impose certain conditions upon the reinstatement of Attorney Curtis' license to practice law in Wisconsin. Finally, we decline to order restitution for reasons explained below.

¶3 Attorney Curtis was admitted to practice law in Wisconsin in 1962. His law license is currently in good

standing. He has not been the subject of any previous disciplinary proceedings.

¶4 On August 3, 2015, the OLR filed the underlying complaint against Attorney Curtis, raising seven counts of misconduct. Count 1 concerned his willful failure to pay personal income taxes for 2007, 2008, and 2009, culminating in his federal conviction of three misdemeanor counts of failure to pay income taxes in violation of 26 U.S.C. § 7203. Count 2 concerned his failure to pay to the federal government employee payroll taxes withheld from his firm's employees' paychecks for the third and fourth quarters of 2013, and all four quarters of 2014. Counts 3 through 6 concerned various trust account problems. Count 7 concerned the administration of funds that were to have been paid into his firm's 401(k) plan.

¶5 Attorney Curtis answered the complaint and admitted three counts of misconduct (Counts 3,[1] 4, and 6), denied three counts of misconduct (Counts 1, 2, and 5), and pled the Fifth Amendment in response to Count 7 and its background allegations.

¶6 The referee held an evidentiary hearing on December 5 and 9, 2016. Both parties submitted post-hearing briefs.

---

[1] In his answer, Attorney Curtis invoked the Fifth Amendment in response to Count 3. In post-hearing briefing before the referee, Attorney Curtis clarified that he had erroneously invoked the Fifth Amendment in response to Count 3, and that his intention was instead to "admit the violation and affirmatively allege the violation was unintentional."

¶7    On September 26, 2017, the referee submitted a report containing his findings of fact, conclusions of law, and a recommendation for discipline.    The findings of fact and conclusions of law are summarized below.

**Willful Failure to Pay Income Tax (Count 1)**

¶8    Count 1 concerns Attorney Curtis' willful failure to pay income taxes——a problem that was long in the making and that culminated in a conviction, following a federal district court jury trial in January 2014, on three misdemeanor counts of willfully failing to pay the taxes he owed for 2007, 2008, and 2009, in violation of 26 U.S.C. § 7203.   See United States v. Curtis, 1:13-cr-00113-WCG (E.D. Wis.).    The amount of unpaid tax, with interest and penalties, was $387,233.    The district court sentenced Attorney Curtis to six months in prison and one year of supervised release, both of which he has now completed. The court also ordered Attorney Curtis to pay the Internal Revenue Service (IRS) $5,000 per month until the total tax liability for the three years was paid in full.

¶9    Attorney Curtis' tax difficulties began years before his conviction.    In 1996 and 1997, he filed returns reporting significant tax obligations, but he made no payments toward those debts.    Over the ensuing years, Attorney Curtis entered into installment payment plans with the IRS, but he did not fully comply with them; he made payments for a period of time, and then stopped.    Attorney Curtis also continued to file yearly tax returns showing significant tax liabilities that he had paid nothing toward at the time of filing.    Eventually the IRS ran

4

out of patience and referred the matter for criminal investigation. His conviction followed, which Attorney Curtis appealed, unsuccessfully. See United States v. Curtis, 781 F.3d 904 (7th Cir. 2015). The Seventh Circuit wrote that there was a "sea of . . . damning evidence demonstrating Curtis' intent" to not pay his taxes, such as the facts that:

> . . . during the three charged years, Curtis had adjusted gross income of more than $1.4 million but paid none of it toward his corresponding tax liabilities of approximately $378,000 for that same time period. Instead, he spent more than $1.1 million on personal expenses that included $142,916 in life insurance premiums; $43,266 for a new Lincoln Navigator luxury SUV; $17,730 worth of wine; $32,775 in donations and political contributions; $6,945 on jewelry; and $10,891 on his pets. Presented with these expenditures and a list that also included gifts, firearms, restaurants, department stores, and other purely discretionary spending, any jury would conclude that Curtis had the money to pay his taxes (at least in part) and simply chose not to.

Id. at 911.

¶10 The referee concluded that Attorney Curtis' long-standing failure to pay his taxes reflected adversely on his fitness as a lawyer in violation of SCR 20:8.4(b),[2] in that it showed a disregard for his legal obligations and reflected adversely on his legal judgment and expertise.

**Failure to Remit Payroll Taxes (Count 2)**

---

[2] SCR 20:8.4(b) provides: "It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.

5

¶11 Count 2 concerns the undisputed fact that Attorney Curtis' firm failed to remit to the federal government the payroll taxes for his law firm's employees for the third and fourth quarters of 2013 and all of 2014. The OLR alleged that this conduct was a form of dishonesty, fraud, deceit, or misrepresentation in violation of SCR 20:8.4(c).[3]

¶12 The referee recommended the dismissal of this charge, citing an overall "paucity of evidence." On the one hand, the referee found that Attorney Curtis became aware, at some point, that his firm had not remitted the payroll taxes that it had withheld from its employees during part of 2013 and all of 2014. But the referee credited Attorney Curtis' testimony at the disciplinary hearing that the firm fell behind on remitting payroll taxes because the IRS's garnishment of firm accounts left him unclear as to whether the seized funds were being applied toward payroll taxes. In the referee's view, the record was too unclear to permit him to conclude that Attorney Curtis engaged in dishonesty, fraud, deceit, or misrepresentation in violation of SCR 20:8.4(c). As such, the referee recommended the dismissal of Count 2.

**Trust Account Violations (Counts 3-6)**

¶13 These misconduct charges concern the disarrayed state of the firm's trust account. Since 1999, Attorney Curtis has

---

[3] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

been the sole partner in the firm; for many years before that, he practiced in partnership with one or more lawyers. Since 1999, Attorney Curtis was the attorney primarily responsible for supervising and managing the firm's trust account, as well as for supervising the trust account-related work of the firm's office manager, bookkeepers, and other staff.

¶14 As a firm largely engaged in the representation of plaintiffs, the firm would receive settlement and judgment payments and deposit these funds in a trust account, pending a determination of how the funds should be disbursed. It was Attorney Curtis' practice (and apparently that of the lawyers who oversaw the firm's trust account before Attorney Curtis began doing so) to hold in the trust account any potentially disputed portions of settlement and judgment payments (e.g., funds that could be subject to subrogation claims) pending resolution of the claims or the expiration of any applicable statute of limitations, which Attorney Curtis understood to span six years from the firm's receipt of the funds. If the claimant was not currently pursuing the claim, Attorney Curtis would advise his client to simply wait and not "wake up" the claimant by attempting to resolve the matter; that way, Attorney Curtis believed, his client might ultimately collect more money than they would have otherwise received had the claim been resolved. Because many clients followed his advice, more money was held in trust than would have been the case had these claims been resolved soon after receipt of the funds. And because the firm failed to periodically review the trust account to ensure that

releasable funds were, in fact, released, the funds languished in the firm's trust account for many years.

¶15 This practice led to an impossibly jumbled trust account. In 2009, while converting the firm from a paper to an electronic accounting system, firm employees discovered that a substantial amount of money had been held in trust for longer than the six-year statute of limitations that Attorney Curtis believed governed them. The firm began an effort to identify and locate clients to whom these funds belonged——a task that proved difficult and, in some instances, unworkable. Some of the clients had moved. Others could not be found. Others had died, sometimes requiring that an estate be opened or reopened. There were some funds held in trust for which the client could not be identified. As a result, a substantial amount of money remained unpaid to its owners. As of April 2014, the firm trust account held a total of $1,059,218.09. Of that amount, at least $105,235.59 related to cases that had been closed prior to April 2008; some funds had been held since as far back as 1978. The firm has made some progress in disbursing these funds; by April 2015, the firm disbursed $42,865.41 of the $105,235.59 related to cases that had been closed prior to April 2008. As of January 2015, there remained $23,487.94 held in trust with respect to which the owners could not be identified.

¶16 Based on these facts and on Attorney Curtis' admissions (see n.1), the referee determined that Attorney Curtis failed to ensure the prompt notice and delivery of funds to clients and third parties, in violation of SCR 20:1.15(b), in

8

effect between October 1, 2000 and June 30, 2004, and former SCR 20:1.15(d)(l), effective as of July 1, 2004 (Count 3).[4]

¶17 Based on the above facts and on Attorney Curtis' admissions in his answer, the referee determined that Attorney Curtis failed to regularly reconcile his trust account in

---

[4] Effective July 1, 2016, substantial changes were made to Supreme Court Rule 20:1.15, the "trust account rule." See S. Ct. Order 14-07, (issued Apr. 4, 2016, eff. July 1, 2016). Because the conduct underlying this case arose prior to July 1, 2016, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2016.

Former SCR 20:1.15(b), in effect between October 1, 2000 and June 30, 2004, provided:

Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render a full accounting regarding such property.

Former SCR 20:1.15(d)(1), in effect between July 1, 2004 and June 30, 2016, provided:

Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

9

violation of SCR 20:1.15(f)(1)g (Count 4),[5] and failed to adequately supervise his staff's management of the trust account in violation of SCR 20:5.3(a) and (b), in effect between October 1, 2000 and December 31, 2009, and SCR 20:5.3(a) and (b), in effect as of January 1, 2010 (Count 6).[6]

---

[5] Former SCR 20:1.15(f)(1)g, in effect between January 1, 2010 and June 30, 2016, provided:

For each trust account, the lawyer shall prepare and retain a printed reconciliation report on a regular and periodic basis not less frequently than every 30 days. Each reconciliation report shall show all of the following balances and verify that they are identical:

1. the balance that appears in the transaction register as of the reporting date;

2. the total of all subsidiary ledger balances for IOLTA accounts and other pooled trust accounts, determined by listing and totaling the balances in the individual client ledgers and the ledger for account fees and charges, as of the reporting date; and

3. the adjusted balance, determined by adding outstanding deposits and other credits to the balance in the financial institution's monthly statement and subtracting outstanding checks and other deductions from the balance in the monthly statement.

[6] Former SCR 20:5.3(a) and (b), in effect between October 1, 2000 and December 31, 2009, provided that, with respect to a nonlawyer employed or retained by or associated with a lawyer:

(a) a partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;

(continued)

10

¶18 The referee determined, however, that the OLR had not proven that Attorney Curtis failed to maintain and retain complete records of trust account funds in violation of SCR 20:1.15(e), in effect between October 1, 2000 and June 30, 2004 and SCR 20:1.15(e)(6), in effect since July 1, 2004 (Count 5).[7] According to the referee, the record was unclear as to

---

(b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer.

Current SCR 20:5.3(a) and (b) provide that, with respect to a nonlawyer employed or retained by or associated with a lawyer:

(a) a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;

(b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer.

[7] Former SCR 20:1.15(e), in effect between October 1, 2000 and June 30, 2004, provided: "Complete records of trust account funds and other trust property shall be kept by the lawyer and shall be preserved for a period of at least six years after termination of the representation."

Former SCR 20:1.15(e)(6), in effect between July 1, 2004 and June 30, 2016, provided: "A lawyer shall maintain complete records of trust account funds and other trust property and shall preserve those records for at least 6 years after the date of termination of the representation."

whether Attorney Curtis' trust account problems were the result of a failure to keep the records required by SCR 20:1.15, or a failure to properly reconcile the records he kept. The referee therefore concluded that the OLR had failed to prove trust account misconduct independent of that charged in Counts 3, 4, and 6.

**401(k) Issues (Count 7)**

¶19 This misconduct charge concerned the firm's payment (or non-payment) of funds into the 401(k) plan that it maintained for its employees. Both firm employees and the firm itself would make contributions to the plan, which was administered by a third party. Attorney Curtis determined the amount of the firm's contribution to the plan.

¶20 The OLR claimed that the firm did not remit to the 401(k) plan the amounts that had been withheld from employee paychecks for that purpose, nor did the firm make its promised contributions to the plan. The OLR claimed that these actions displayed dishonesty, fraud, deceit, or misrepresentation in violation of SCR 20:8.4(c). In his answer to the OLR complaint and in his hearing testimony, Attorney Curtis invoked the Fifth Amendment in response to allegations and questions about the 401(k) plan.

¶21 The referee recommended the dismissal of this misconduct charge, again citing a paucity of evidence in the record. The referee maintained that the record did not show why amounts withheld from employee checks were not promptly paid to the 401(k) plan; whether Attorney Curtis was involved in the

12

nonpayment of employee funds to the 401(k) plan; what representations Attorney Curtis made to employees regarding the 401(k) plan; how any such representations related to the status of the 401(k) plan at the time they were made; and whether the firm was current on its own contributions to the plan. The only established facts regarding the 401(k) plan, according to the referee, were that: (1) while delayed, all amounts that the firm withheld from employee paychecks were eventually paid into the 401(k) plan; and (2) Attorney Curtis pled the Fifth Amendment in response to allegations and questions about the 401(k) plan. The referee reasoned that neither of these facts, viewed together or in isolation, constituted sufficient proof of dishonesty, fraud, deceit, or misrepresentation to warrant a determination of an SCR 20:8.4(c) violation. Although an attorney's invocation of the Fifth Amendment in a disciplinary proceeding permits an inference to be drawn on issues involving grounds for discipline, State v. Postorino, 53 Wis. 2d 412, 416-17, 193 N.W.2d 1 (1972), the referee wrote that the OLR was "asking the possibility of a negative inference do too much work" in this case.

¶22 As for the amount of discipline required to address the above-described misconduct, the referee noted various mitigating and aggravating factors. On the mitigating side of the ledger, the referee noted that Attorney Curtis did not attempt to conceal his tax obligations; rather, he filed yearly tax returns informing the government what he owed, though he did not pay the amount owed. Attorney Curtis served time in prison,

13

without practicing law, for his failure to pay income taxes. The referee also noted that the trust account violations did not benefit Attorney Curtis, were not intentional, and did not involve misrepresentation or dishonesty. Attorney Curtis also tried to locate the clients to whom money was owed. The referee further noted that Attorney Curtis had practiced law for 55 years without prior discipline, and is now 81 years old.

¶23 On the aggravating side of the ledger, the referee noted that the length of time during which Attorney Curtis was delinquent on his taxes and the size of the delinquency itself were quite considerable. Likewise, the dollar amount of the undisbursed trust account funds and the length of time during which those funds languished in the trust account were significant.

¶24 Given all of the above considerations, the referee proposed that a 120-day license suspension was in order. The referee also recommended that, as a condition of Attorney Curtis' practice of law following his suspension, he must disburse the funds held in trust to the proper recipients, and he must certify to the OLR that he has a system in place that: (1) provides periodic reports to clients regarding amounts held in trust; (2) flags amounts that have remained in trust for more than a specified period since receipt of the funds and since the last review by an attorney; and (3) requires an attorney in the firm to review these funds on an annual basis to determine whether they should be disbursed.

14

¶25 Because no appeal has been filed from the referee's report and recommendation, we review the matter pursuant to SCR 22.17(2). When reviewing a referee's report and recommendation, we affirm the referee's findings of fact unless they are found to be clearly erroneous, but we review the referee's conclusions of law on a de novo basis. In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. We determine the appropriate level of discipline to impose given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶26 This is a difficult case. The referee's task was undoubtedly complicated by the polar opposite positions taken by the parties before him: the OLR demanded the revocation of Attorney Curtis' license, and Attorney Curtis insisted that no discipline was warranted whatsoever. In a lengthy report, the referee resisted any temptation to make a middle-ground recommendation, instead proposing a 120-day suspension——a result from which neither party appealed, leaving us to decide this matter without the benefit of automatically ordered briefing.[8]

---

[8] We could have ordered the parties to file briefs with us on our own motion. See SCR 22.17(2). But we have not done so, as the issues are not so insurmountable as to justify the further expense and delay of additional briefing in this long-pending matter.

¶27 Adding another layer of complexity, Attorney Curtis declined, on Fifth Amendment grounds, to answer any allegations or questions regarding his firm's 401(k) plan (Count 7), but also introduced evidence at the disciplinary hearing to suggest that the plan's finances were in order.  This litigation strategy was entirely permissible:  our rules permit a respondent-lawyer to invoke his or her right against self-incrimination, SCR 22.03(7), and this right is unaffected by assertions of innocence.  See Ohio v. Reiner, 532 U.S. 17, 21 (2001).  It was then incumbent on the OLR to make a strong case against Attorney Curtis on the subject of the 401(k) plan from independent sources—a task that, the record shows, the OLR might have done better.  For example, the record is largely devoid of records relating to the 401(k) plan, such as the plan's accounting and tax records, or its standard quarterly and annual reports, or any regular correspondence between the firm and the plan's third-party administrator.  All said, this court is left with a challenging task in determining, on the facts, the magnitude of Attorney Curtis' misconduct and the amount of discipline necessary to prevent its recurrence, either by him or other lawyers.

¶28 We start by addressing the easiest issue to dispose of:  whether Attorney Curtis' willful failure to pay income taxes reflected adversely on his fitness as a lawyer, in violation of SCR 20:8.4(b) (Count 1).  The answer is a clear yes.

¶29 Attorney Curtis' position before the referee seemed to be that his tax woes didn't amount to professional misconduct given that he *filed* accurate tax returns——he simply didn't *pay* the taxes owed, which was a purely personal failing that didn't abuse his professional status as a lawyer, or violate any professional norms, or harm any clients, or (he claimed) tarnish his reputation in the legal community. We disagree, as did the referee. Given his federal conviction, upheld on appeal, Attorney Curtis cannot meaningfully dispute that he intentionally failed to pay any of the taxes he owed for the years 2007 through 2009 despite having adjusted gross income of more than $1.4 million over those years, and despite having spent significant sums on extravagances——$17,730 on wine, for example. See Curtis, 781 F.3d at 911. As Attorney Curtis himself told the district court during his sentencing allocution,[9] "my whole system was wrong. . . . I had the concept that it was my money and it isn't my money. Unfortunately I never really thought about it." This sort of blinkered thinking raises a red flag as to Attorney Curtis' fitness as lawyer——one that he, in this proceeding, seems unable or unwilling to acknowledge: during his disciplinary hearing, he blithely compared the jury's verdict that he willfully failed to pay his taxes to "historical verdicts that the world was flat. I got

---

[9] The transcript of Attorney Curtis' sentencing hearing from his federal tax case is included in the record of this disciplinary matter, along with various other documents from that case.

17

beat." On these facts, we have no difficulty concluding that Attorney Curtis' criminal act reflects adversely on his fitness as a lawyer.

¶30 We move next to Count 2, which alleged that, by failing to remit to the federal government the payroll taxes[10] that had been withheld from employee paychecks during the third and fourth quarters of 2013 and all of 2014, Attorney Curtis engaged in a form of dishonesty, fraud, deceit, or misrepresentation in violation of SCR 20:8.4(c). As described above, the referee recommended the dismissal of this charge, citing ambiguity in the record as to whether Attorney Curtis understood that the firm's payroll taxes were not being paid. On the one hand, the referee found that Attorney Curtis became

---

[10] On the subject of payroll taxes, the Seventh Circuit has explained:

> The Internal Revenue Code requires employers to withhold income and Federal Insurance Contribution Act taxes from their employees' wages. The amounts collected from the employees' wages are considered to be held by the employer in trust for the United States, and must be paid over quarterly. See Slodov v. United States, 436 U.S. 238, 244, 98 S.Ct. 1778, 1783-84, 56 L.Ed.2d 251 (1978) (citing 26 U.S.C. § 7501(a)). While it is not always required that these funds be segregated by the employer prior to being paid over to the IRS, the law is clear that the funds may not be used by the employer for any other obligations, including but not limited to operating expenses. Id.; see also Purdy Co. of Illinois v. United States, 814 F.2d 1183, 1186 (7th Cir. 1987).

> United States v. Kim, 111 F.3d 1351, 1356-57 (7th Cir. 1997).

18

aware, at some point, that his firm had not remitted the payroll taxes that it had withheld from its employees during part of 2013 and all of 2014. But the referee credited testimony at the disciplinary hearing that the firm fell behind on remitting payroll taxes because the IRS had garnished firm accounts, which in turn left Attorney Curtis unclear as to whether the seized funds were being applied toward payroll taxes. These facts, the referee wrote, preclude a determination that Attorney Curtis' conduct rose to the level of dishonesty, fraud, or deceit that constituted an SCR 20:8.4(c) violation. As such, the referee recommended the dismissal of Count 2.

¶31 We accept the referee's recommendation to dismiss Count 2. Neither party has challenged any of the referee's findings of fact or legal conclusions underlying the referee's recommended dismissal of this count. Our own review of the matter leads us to accept the referee's findings of fact——in particular his credibility determination that Attorney Curtis was unclear as to whether funds seized by the IRS were being applied toward payroll taxes. See In re Disciplinary Proceedings Against Nunnery, 2009 WI 89, ¶40, 320 Wis. 2d 422, 769 N.W.2d 858 ("The referee is best situated to judge the credibility of witnesses.") We also note, as did the referee, the absence from the record of certain documentary evidence that would have been helpful in analyzing this misconduct count; e.g., the firm's payroll tax returns, payroll accounting records, employee payroll stubs, etc. Based on the referee's unchallenged factual findings of fact and on the state of the

19

record, we agree with the referee's conclusion that the OLR failed to establish that Attorney Curtis engaged in dishonesty, fraud, deceit, or misrepresentation sufficient to warrant a misconduct determination on Count 2.

¶32 We move next to Counts 3 through 6, which concern trust account problems. Attorney Curtis admitted in his answer that he failed to regularly reconcile his trust account (Count 4), and he failed to adequately supervise his staff's management of the trust account (Count 6). Attorney Curtis admitted in his post-hearing briefing that he failed to ensure the prompt notice and delivery of funds to clients and third parties (Count 3). Given Attorney Curtis' misguided practice of trying to wait-out subrogated claims by letting subrogated funds lay dormant——and untracked——in his trust account, we have no difficulty accepting his admissions on these counts.

¶33 We also agree with the referee's recommendation to dismiss Count 5, which alleged that Attorney Curtis failed to maintain and retain complete records of trust account funds. According to the referee, the record is unclear as to whether Attorney Curtis' trust account problems were the result of a failure to keep the records required by SCR 20:1.15, or a failure to properly reconcile the records he kept. The referee therefore concluded that the OLR had failed to prove trust account misconduct independent of that charged in Counts 3, 4, and 6. Neither party has appealed from this determination. We conclude that the referee's findings of fact are not clearly erroneous, and thus we uphold the referee's conclusion of law

20

that Attorney Curtis' conduct did not violate former and current SCR 20:1.15(e)(6).

¶34 We move next to Count 7, which alleged that Attorney Curtis engaged in dishonesty, fraud, deceit, or misrepresentation in violation of SCR 20:8.4(c) by virtue of his failure to deposit in the firm's 401(k) plan the amount of funds that his firm withheld from employee paychecks and the amount of funds that his firm had committed to pay into the fund. As mentioned above, Attorney Curtis pled the Fifth Amendment with respect to any allegations regarding this count during the discovery, pleadings, and disciplinary hearing stages of this matter. We have previously held that although a respondent-lawyer's invocation of the Fifth Amendment "is not in itself a ground for disbarment," we may draw a negative inference from that invocation. Postorino, 53 Wis. 2d at 417. The referee concluded that this negative inference constituted the entirety of the OLR's case in support of Count 7——not enough to support a misconduct charge, and thus the referee recommended its dismissal.

¶35 The referee's discussion of this issue lacks a recommendation on whether Attorney Curtis properly invoked the Fifth Amendment. Fifth Amendment protection "must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer." Hoffman v. United States, 341 U.S. 479, 486-87 (1951). "The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself——his say-so does not of itself establish the

21

hazard of incrimination.  It is for the court to say whether his silence is justified, and to require him to answer if 'it clearly appears to the court that he is mistaken.'"  Id. (citations omitted).  Thus, the "trial court has a clear responsibility to make a full record that the witness' fear of incrimination is valid, real and appreciable, and not speculative or merely an imaginary possibility of incriminatory danger."  State v. Harris, 92 Wis. 2d 836, 844-45, 285 N.W.2d 917 (Ct. App. 1979) (footnotes omitted).

¶36 The referee was to have made such "a full record" here.  See SCR 22.16(1) ("The referee has the powers of a judge trying a civil action and shall conduct the hearing as the trial of a civil action to the court.")  The referee did not do so; it appears that the parties and the referee alike simply assumed that Attorney Curtis' silence regarding the 401(k) funds was justified.  Thus, at no point in the record before us did Attorney Curtis articulate a reason why responding to allegations or questions regarding the 401(k) plan could subject him to criminal liability, nor did the referee make a determination of the proper scope and legitimacy of his Fifth Amendment claim.  Such an unchecked use of the Fifth Amendment rests uneasily alongside our method of maintaining the integrity of the bar by requiring attorneys to fully cooperate with OLR investigations.  See SCR 20:8.4(h), SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), and SCR 22.04(1).

¶37 Nevertheless, it takes little imagination to see the "real and appreciable" fear that presumably motivated Attorney

22

Curtis' invocation of the Fifth Amendment. See, e.g., 18 U.S.C. § 664 (criminalizing theft or embezzlement from an employee benefit plan). At this point, requiring Attorney Curtis to trace the path of his employees' 401(k) withholdings from paycheck-to-plan might improperly compel him "to surrender the very protection which the privilege is designed to guarantee." Hoffman, 341 U.S. at 486. Thus, we conclude that Attorney Curtis properly asserted the Fifth Amendment privilege to avoid answering allegations and questions about his firm's payment of 401(k) funds.

¶38 The referee's discussion of the 401(k) issue is lengthy and appropriately critical of the ambiguous nature of much of the testimony and exhibits received on the issue. Based on the evidence submitted, the referee found that, for an unknown period of time, an unknown amount of employees' 401(k) withholdings were delinquent from the firm's 401(k) plan, but the firm cured this delinquency by no later than August 2015. Citing a shortage of evidence, the referee wrote that he was unable to make findings as to why employees' 401(k) withholdings were delinquent from the firm's 401(k) plan, or what representations Attorney Curtis made to employees related to the plan, or whether Attorney Curtis was even involved with the 401(k) withholdings. The referee opined that the delay in remitting employees' 401(k) withholdings to the 401(k) plan, along with the adverse inference drawn from Attorney Curtis' invocation of his Fifth Amendment privilege, were not enough to demonstrate an SCR 20:8.4(c) violation; additional evidence of

23

"the circumstances of [the funds'] delay" was necessary, the referee wrote.

¶39 We agree. Given the OLR's failure to submit all relevant information about the delinquent 401(k) contributions (answering the essential inquiries of who, what, where, when, why, and how), we cannot conclude that Attorney Curtis' actions rose to the level to the level of dishonesty, fraud, deceit, or misrepresentation that constituted a violation of SCR 20:8.4(c). We agree with the referee's observation that the OLR was asking the adverse inference drawn from Attorney Curtis' assertion of his Fifth Amendment privileges to do "too much work."

¶40 We turn next to the issue of the appropriate discipline for Attorney Curtis. The referee recommended a 120-day suspension of Attorney Curtis' law license, along with a variety of trust account related reinstatement conditions. We agree that a four-month suspension is sufficient, as it is well within the wide range of discipline this court has imposed for arguably similar misconduct. See In re Disciplinary Proceedings Against Washington, 2007 WI 65, 301 Wis. 2d 47, 732 N.W.2d 24 (18-month suspension for conduct resulting in federal conviction for one count of tax evasion); In re Disciplinary Proceedings Against McKinley, 2014 WI 48, 354 Wis. 2d 717, 848 N.W.2d 295 (60-day suspension for conduct resulting in two state misdemeanor convictions for filing a false tax return); In re Disciplinary Proceedings Against Usow, 214 Wis. 2d 596, 571 N.W.2d 162 (1997) (six-month suspension for misrepresentation and trust account violations that were found to be committed

24

without intent and due to a failure to properly supervise office staff).

¶41 We turn next to the various conditions of reinstatement recommended by the referee. We agree that certain conditions are appropriate to foster Attorney Curtis' compliance with trust account requirements, though we do not impose the exact conditions suggested by the referee. Rather, we simply direct Attorney Curtis, following reinstatement, to submit to OLR trust account monitoring for a period of three years, or until such time as this court enters an order ending monitoring.

¶42 We turn next to the issue of costs. Citing his view that the OLR failed to prove the misconduct alleged in three of the seven alleged counts (Counts 2, 5, and 7), the referee recommended that Attorney Curtis be ordered to pay three-quarters of the cost of this proceeding, which will result in Attorney Curtis being required to pay costs of $12,665.15. Neither Attorney Curtis nor the OLR challenges this recommendation. We agree with the referee and the parties that a one-quarter reduction in costs is warranted. Our determination is not the result of the application of a precise mathematical formula, but is based on our thorough consideration of the record, the manner in which this case developed, and the factors set forth in SCR 22.24(1m).

¶43 Finally, we turn to the issue of restitution. The OLR has not sought restitution, citing two reasons: (1) as part of his criminal judgment, the district court ordered Attorney Curtis to make $5,000 monthly payments until his overdue income

25

taxes are fully paid, making a restitution award related to Count 1 unnecessary; and (2) the remaining counts not recommended for dismissal by the referee concern trust account problems of such age and complexity that there is no reasonably ascertainable amount of restitution.

¶44 We agree with the OLR's reasoning. As for Attorney Curtis' back taxes, there is no need for this court to order restitution that would duplicate that already ordered in the federal court system. As for Attorney Curtis' trust account violations, we note that, according to the record, thousands of dollars remain in the firm's trust account with respect to which the owners have not been identified, despite the firm's substantial efforts to do so. Given the OLR's plausible inability to determine whether any particular client or third party is owed any particular amount of money by Attorney Curtis, we will accede to the OLR's request not to award restitution in this matter. However, as both part of Attorney Curtis' sanction and as a condition of reinstatement, we will require him to disburse all funds in his trust account to their rightful owners, and if the rightful owners cannot be located, he must transfer the funds to the state treasurer's office as unclaimed or unidentifiable property.

¶45 IT IS ORDERED that the license of George W. Curtis, Jr. to practice law in Wisconsin is suspended for a period of four months, effective March 29, 2018.

¶46 IT IS FURTHER ORDERED that George W. Curtis, Jr. shall distribute all funds in his trust account to their rightful

26

owners. If the rightful owners cannot be located, George W. Curtis, Jr. shall transfer those funds to the state treasurer's office as unclaimed or unidentifiable property. George W. Curtis, Jr. shall provide documentation to the OLR that all funds in his trust account have been so distributed.

¶47 IT IS FURTHER ORDERED that, upon reinstatement of his license to practice law, George W. Curtis, Jr.'s trust account shall be subject to monitoring by the Office of Lawyer Regulation for three years or until further order of this court.

¶48 IT IS FURTHER ORDERED that within 60 days of the date of this order, George W. Curtis, Jr. shall pay to the Office of Lawyer Regulation costs in the amount of $12,665.15.

¶49 IT IS FURTHER ORDERED that George W. Curtis, Jr. shall comply with the provisions of SCR 22.26 concerning the duties of an attorney whose license to practice law has been suspended.

¶50 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.28(2).